**In re Recalcitrant Witness Richard BOEH,**

**Julia GOMEZ, et al., Plaintiffs–Appellees,**

v.

**Daryl GATES, et al., Defendants,**

**and**

**United States of America, Respondent–Appellant.**

No. 92–55096.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Feb. 14, 1992.*

Decided May 27, 1994.

---

* Argument in this case was conducted by telephone.

See also 804 F.Supp. 69.

Steven E. Zipperstein, Sean R. Berry and Mark D. Larsen, Asst. U.S. Attys., Los Angeles, CA, for respondent-appellant.

Stephen Yagman, Marion R. Yagman, Yagman & Yagman, P.C., Venice, CA, for plaintiffs-appellees.

Before: CANBY, NORRIS and LEAVY, Circuit Judges.

Opinion by Judge CANBY; Dissent by Judge NORRIS

CANBY, Circuit Judge:

The United States and Richard Boeh,[1] an agent of the Federal Bureau of Investigation, appealed from the district court's denial of a motion to quash a subpoena *ad testificandum* and two civil contempt orders issued in response to Boeh's refusal to testify in a civil trial. The appeal was expedited pursuant to 28 U.S.C. § 1826(b). On February 18, 1992, we entered a brief order reversing all three orders of the district court, with Judge Norris indicating his dissent. Our order stated that opinions would follow; we now deliver them.

---

1. The United States, as a purported real-party-in-interest, filed the original notice of appeal in this case. Richard Boeh filed a motion to intervene in this court on February 4, 1992. The motion clearly manifests Boeh's intent to appeal from the district court's orders, and it was brought within the time permitted for filing of a notice of appeal. We therefore treat Boeh's motion as a notice of appeal. *See Rabin v. Cohen*, 570 F.2d 864, 866 (9th Cir.1978). We direct the Clerk of this court to transmit the motion to the Clerk of the district court for filing as a notice of appeal with a filing date of February 4, 1992.

In light of Boeh's status as a party to this appeal, we need not address plaintiffs' arguments that the United States lacks standing to bring this appeal.

## BACKGROUND

The underlying litigation arises out of an incident in which members of the Los Angeles Police Department shot four suspects, killing three of them and critically wounding the fourth, immediately after a robbery of a fast food restaurant in Sunland, California. The surviving suspect and relatives of the deceased suspects brought a civil rights action in federal court against the police officers, Chief Daryl Gates, the City of Los Angeles, and various other officials, alleging the use of excessive force.

Shortly after the trial commenced, plaintiffs caused a subpoena to be served on Richard Boeh.[2] Boeh was a Special Agent of the FBI, and was the case agent for a criminal investigation of the shootings. Boeh had not been present at the incident; he was not a percipient witness to any events upon which the litigation was based. Neither Boeh nor the United States was a party to the litigation.

Plaintiffs' purpose in serving the subpoena was to secure Boeh's testimony regarding evidence he had collected in his investigation and his conclusions as to what had actually occurred at the scene of the shooting. The United States Attorney referred the subpoena to the Department of Justice, pursuant to 28 C.F.R. § 16.22(a) (1991), which provides:

> In any federal or state case or matter in which the United States is not a party, no employee ... of the Department of Justice shall, in response to a demand, produce any material contained in the files of the Department, or disclose any information relating to or based upon material contained in the files of the Department, or disclose any information or produce any material acquired as part of the performance of that person's official duties or because of that person's official status without prior approval of the proper Department official. . . .

The proper official in the Department denied permission for Boeh to testify, and directed Boeh to decline respectfully to obey the subpoena. The United States filed a motion on Boeh's behalf to quash the subpoena. Before hearing the motion to quash, the district court ordered Boeh to appear *in camera* and answer questions that would permit the court to learn what Boeh knew about the alleged civil rights violations and to determine, among other things, what limits should be placed on Boeh's testimony. Boeh refused to answer the court's questions and the district court held him in civil contempt. The district court then denied the United States' motion to quash and, in open court, ordered Boeh to testify pursuant to the subpoena. Boeh again refused and again was held in civil contempt. This appeal followed.

## DISCUSSION

■ Boeh may not be held in contempt for failing to comply with a court order if a valid regulation required him not to comply. *Ex Parte Sackett*, 74 F.2d 922, 923 (9th Cir. 1935); *Boron Oil Co. v. Downie*, 873 F.2d 67, 69 (4th Cir.1989). We are convinced, both by statute and precedent, that 28 C.F.R. § 16.22(a) is valid insofar as it directs Boeh not to testify "without prior approval of the proper Department official." The question whether that prior approval was unlawfully withheld is not, we conclude, properly before us on this appeal from contempt rulings against Boeh.

Section 16.22(a) was promulgated under the authority of the so-called "housekeeping statute," 5 U.S.C. § 301, which provides:

> The head of an Executive department ... may prescribe regulations for the government of his department, the conduct of its employees, the distribution and performance of its business, and the custody, use, and preservation of its records, papers, and property. This section does not authorize withholding information from the public or limiting the availability of records to the public.

The Department of Justice regulation here clearly falls within the terms of the first sentence of this statute: the regulation prescribes the conduct of employees, the performance of the agency's business, and the use of its records. Any doubt as to the validity of the regulation's requirement of prior ap-

---

**2.** Service of the subpoena was accepted by the United States Attorney, on behalf of Boeh.

proval is foreclosed, in our view, by the Supreme Court's decision in *United States ex rel. Touhy v. Ragen*, 340 U.S. 462, 468, 71 S.Ct. 416, 419, 95 L.Ed. 417 (1951), which upheld the validity of a predecessor to 28 C.F.R. § 16.22(a).

In *Touhy*, a Department of Justice employee was subpoenaed to produce departmental records in a habeas corpus proceeding. Pursuant to the then-existing regulation, the Attorney General withheld permission for the employee to comply with the subpoena, and the employee was held in contempt. The Supreme Court held that the employee could not be held in contempt because the regulation validly withdrew from the employee and placed in the Attorney General the decision whether and on what terms to comply with the subpoena. *Id.* at 467–69, 71 S.Ct. at 418–19. In so holding, the Court relied on its earlier decision in *Boske v. Comingore*, 177 U.S. 459, 467–69, 20 S.Ct. 701, 704–05, 44 L.Ed. 846 (1900), upholding the right of the Secretary of the Treasury to withdraw from subordinates all discretion over the use and production of tax records. *Boske* overturned a state court's contempt order against a tax collector who refused to respond to a subpoena *duces tecum*. *See also Swett v. Schenk*, 792 F.2d 1447, 1451 (9th Cir.1986) (National Transportation Safety Board regulation restricting employee testimony); *Ex Parte Sackett*, 74 F.2d at 923–24 (similar Department of Justice regulation).

Plaintiffs argue that section 16.22(a), as applied in this case, violates the separation of powers by vesting an executive branch official with the heretofore exclusively judicial power to determine what evidence will be admitted in a civil trial. We give no such effect to the regulation. We do not decide here that Boeh may never be required to testify or that section 16.22(a) establishes an absolute privilege. We conclude only that plaintiffs selected an improper method of attempting to compel Boeh's testimony. Plaintiffs might have succeeded by other means in bringing the Attorney General or the designated "proper Department official" into court to contest his or her decision not to permit Boeh's testimony.[3] Once properly before the appropriate court, the Attorney General or designated official could have claimed whatever privileges might shield Boeh's testimony and the court could then have ruled on those assertions of privilege. *See Committee for Nuclear Responsibility, Inc. v. Seaborg*, 463 F.2d 788, 793 (DC Cir.1971) (when the head of an agency challenges a subpoena, "the claim of privilege is one for consideration by the court"); *see also NLRB v. Capitol Fish Co.*, 294 F.2d 868, 873–74 (5th Cir. 1961) (when order is directed to head of the agency, *Touhy* and *Boske* are no longer relevant); *Reynolds v. United States*, 192 F.2d 987, 992–93 (3rd Cir.1951) (same), *rev'd on other grounds*, 345 U.S. 1, 73 S.Ct. 528, 97 L.Ed. 727 (1953). We need not decide those issues because they are not before us.[4]

**3.** Plaintiffs could have brought a separate action to challenge the Department's decision under the Administrative Procedure Act, 5 U.S.C. §§ 701–06. *See Davis Enterprises v. EPA*, 877 F.2d 1181, 1184–88 (3rd Cir.1989), *cert. denied*, 493 U.S. 1070, 110 S.Ct. 1113, 107 L.Ed.2d 1020 (1990); *Appeal of the Sun Pipe Line Co.*, 831 F.2d 22, 24–26 (1st Cir.1987), *cert. denied*, 486 U.S. 1055, 108 S.Ct. 2821, 100 L.Ed.2d 922 (1988); *see also Swett*, 792 F.2d at 1452 n. 2 (suggesting that the proper method for challenging an agency's denial of permission is through a direct APA action). Plaintiffs may also have been able to bring a mandamus action against the Attorney General or his designee to require the granting of permission. *See* 28 U.S.C. § 1361. Such an attempt was unsuccessful in *Giza v. Secretary of HEW*, 628 F.2d 748 (1st Cir.1980), but there the plaintiffs in a state proceeding were seeking federal mandamus to compel a federal employee to be deposed as an expert witness. The court held

that mandamus would not lie because there was no duty on the part of the federal agency to supply expert testimony for plaintiffs' state court action. *Id.* at 751–52. These considerations would not preclude mandamus in a federal action to seek other than expert testimony. *See* Note, *Touhy and the Housekeeping Privilege: Dead but not Buried?*, 70 Tex.L.Rev. 685, 694 (1992).

**4.** We therefore disagree with the dissenting opinion that this case presents the question left open in *Touhy*: "may the head of a federal agency make 'a *conclusive* determination' not to produce evidence sought by a federal court." *Infra* p. 770 (emphasis added). On the contrary, we leave open the same question left open by *Touhy*. We do not rule on any question of executive privilege, and we certainly do not hold the Attorney General's withholding of permission "conclusive." *Touhy* held that a contempt proceed-

Our conclusion here closely tracks the Supreme Court's decision in *Touhy.* After ruling that the Attorney General's regulation similar to section 16.22(a) had been validly promulgated under the predecessor statute to 5 U.S.C. § 301, the Court stated:

> We find it unnecessary, however, to consider the ultimate reach of the authority of the Attorney General to refuse to produce at a court's order the government papers in his possession, for the case as we understand it raises no question as to the power of the Attorney General himself to make such a refusal. The Attorney General was not before the trial court. It is true that his subordinate ... acted in accordance with the Attorney General's instructions and a department order. But we limit our examination to what this record shows, to wit, a refusal by a subordinate of the Department of Justice to submit papers to the court in response to its subpoena *duces tecum* on the ground that the subordinate is prohibited from making such submission by his superior through Order No. 3229. *The validity of the superior's action is in issue only insofar as we must determine whether the Attorney General can validly withdraw from his subordinates the power to release department papers.*

340 U.S. at 467, 71 S.Ct. at 419 (emphasis added) (footnote omitted). The Court thus rejected a separation of powers argument on the ground that it was not ruling on the Attorney General's power to refuse to produce the subpoenaed documents. *Id.* at 468–69, 71 S.Ct. at 419–20. Justice Frankfurter

emphasized this same point in his concurring opinion, describing the issue as "a matter of internal administration." *Id.* at 471, 71 S.Ct. at 421. In accord with *Touhy,* we decline to reach the question of the Attorney General's power to refuse to provide evidence where the United States is not a party.[5]

Indeed, we are compelled by our own circuit authority to reject any attempt at weighing the validity of the Attorney General's decision in the context of a contempt proceeding against his subordinate. In *Swett v. Schenk,* 792 F.2d at 1452, we upheld a district court's dismissal of a removed contempt proceeding against a subordinate federal official. We stated that we understood the appellant's frustration with the fact that the validity of the departmental decision, under its own regulations, had never been weighed and applied to his case. Nevertheless, we held that *Touhy* precluded the determination of such a question in a contempt proceeding:

> [T]he *Touhy* doctrine is jurisdictional and precludes a contempt action regardless of whether section 835.3(b) is ultimately determined to protect the requested testimony. Consequently, *a consideration of the merits can play no part in our decision.*

*Id.* (emphasis added) (footnote omitted). This ruling in *Swett* governs our application of *Touhy* to this case. *See also Ex Parte Sackett,* 74 F.2d at 923–24 (applying *Boske* and upholding Department of Justice regulation prohibiting investigating officer from testifying, despite assumed materiality of the records subpoenaed).[6]

ing against a subordinate who has been denied permission to respond to a subpoena does not present the question whether the superior officer's denial of permission was valid. *Touhy,* 340 U.S. at 467, 71 S.Ct. at 418–19. We decide the same.

5. For the same reasons, we need not reach the question of the effect of the last sentence of 5 U.S.C. § 301: "This section does not authorize withholding information from the public or limiting the availability of records to the public." This sentence might affect the question whether the Attorney General can prevail in the assertion of privileges once he is properly brought before the appropriate court.

6. We have found only one case that, in the context of a motion to quash a subpoena against a

subordinate officer, ruled upon the validity of the department's refusal to grant permission to testify. In *Moore v. Armour Pharmaceutical Co.,* 927 F.2d 1194 (11th Cir.1991), a litigant appealed from a district court's grant of a motion to quash filed by the Department of Health and Human Services. In affirming the order quashing, the court of appeals applied APA standards and upheld the validity of the HHS' regulation against testimony by physicians of the Center for Disease Control, as applied to the case before it. *Id.* at 1197–98.

In all of the other cases that we have found applying the *Touhy* rule to preclude the enforcement of a subpoena against a subordinate official, the agency's denial of permission was simply given effect. In addition to *Swett* and *Sackett* from this circuit, *see, e.g.,* cases cited *infra,* p. 765–66.

*Touhy* and the case upon which it relied, *Boske v. Comingore,* 177 U.S. 459, 20 S.Ct. 701, 44 L.Ed. 846 (1900), both dealt with subpoenas *duces tecum,* while this case involves a subpoena *ad testificandum.* There is no difference in principle, however, between the power of the Attorney General to specify what records a subordinate may release and the power to specify what information a subordinate may release through testimony. The Court acknowledged "the usefulness, indeed the necessity, of centralizing determination as to whether subpoenas *duces tecum* will be willingly obeyed or challenged[.]" *Touhy,* 340 U.S. at 468, 71 S.Ct. at 419. The same rationale justifies the Attorney General's power to determine whether privilege should be invoked for Boeh's testimony. The clear import of *Boske, Touhy,* and *Sackett* is that a challenge to the Attorney General's decision cannot be initiated by contempt orders against an agent who has been denied permission to testify.

In *Swett,* we applied the *Touhy* principle to affirm the district court's dismissal of a contempt action against a National Transportation Safety Board investigator who had refused to testify in a state court tort action pursuant to a similar regulation. We held that the investigator could not be compelled to testify over the contrary command of the validly promulgated regulation. *Swett,* 792 F.2d at 1451–52 (citing 49 C.F.R. § 835.-3(a)).[7] Numerous other courts have also applied the *Touhy* doctrine to subpoenas seeking testimony, rather than documentary evidence, from subordinate federal officials. *United States v. Bizzard,* 674 F.2d 1382, 1387 (11th Cir.), *cert. denied,* 459 U.S. 973, 103 S.Ct. 305, 74 L.Ed.2d 286 (1982); *Giza v. Secretary of Health, Educ. & Welfare,* 628

F.2d 748, 751–52 (1st Cir.1980); *United States v. Allen,* 554 F.2d 398, 406–07 (10th Cir.), *cert. denied,* 434 U.S. 836, 98 S.Ct. 124, 54 L.Ed.2d 97 (1977); *Giancana v. Johnson,* 335 F.2d 372, 375–76 (7th Cir.1964); *Appeal of the United States Securities & Exchange Comm'n,* 226 F.2d 501, 516–20 (6th Cir.1955); *Hotel Employees–Hotel Ass'n Pension Fund v. Timperio,* 622 F.Supp. 606, 607–08 (S.D.Fla.1985); *Reynolds Metals Co. v. Crowther,* 572 F.Supp. 288, 290–91 (D.Mass. 1982); *Marcoux v. Mid–States Livestock,* 66 F.R.D. 573, 577–79 (W.D.Mo.1975); *North Carolina v. Carr,* 264 F.Supp. 75, 78–80 (W.D.N.C.1967), *appeal dism'd,* 386 F.2d 129 (4th Cir.1967); *In re Mengel,* 201 F.Supp. 687, 689–90 (W.D.Pa.1962); *see also Davis Enterprises,* 877 F.2d at 1184–88 (upholding EPA decision, challenged under APA, not to permit testimony of subordinate official); *Boron Oil,* 873 F.2d at 69–72 (relying primarily on sovereign immunity and the Supremacy Clause). *Cf. Moore,* 927 F.2d at 1197–98 (upholding under APA standard a Health and Human Services Department decision to withhold a subordinate official's testimony; issue raised on motion to quash subpoena). We conclude that, in the absence of a direct challenge to the Attorney General's decision to withhold permission and a ruling that permission was improperly withheld, Boeh cannot be held in contempt for refusing to testify without permission, pursuant to 28 C.F.R. § 16.22(a).[8]

■ The district court attempted to draw a distinction between its order requiring Boeh to reveal the contents of his prospective testimony *in camera* and its order compelling Boeh's testimony in open court. For the purposes of the *Touhy* doctrine, we see no distinction.[9] Both orders are infirm. The

---

**7.** The underlying litigation in *Swett* had been removed from state court; therefore, we could have rested our decision on either the Supremacy Clause, U.S. Const. art. VI, cl. 2, or sovereign immunity. We did not, however; we upheld the district court's dismissal of the contempt action on the basis of the *Touhy* doctrine without reference to the Supremacy Clause or sovereign immunity. *Swett,* 792 F.2d at 1451–52. For this reason, we do not find *Swett* to be readily distinguishable from our case, as the dissent urges.

**8.** We emphasize that Boeh was not subpoenaed as a percipient witness to the events in issue in

the civil trial. We need not address the questions of application or interpretation of section 16.22(a) that might be posed in such a case.

We also have no need to address here the substantial evidentiary questions that might be raised by plaintiffs' attempt to introduce the testimony of Boeh as a non-percipient witness. *See, e.g.,* Fed.R.Evid. 701, 702, 802.

**9.** In *Touhy,* the Supreme Court observed that the subordinate employee had not been asked to submit the materials *in camera,* but that observation was of significance only because the regula-

district court cannot confer authority on Boeh to testify or reveal information *in camera* when the Attorney General has withdrawn that authority. Section 16.22(a) clearly reserves to the Attorney General or the properly designated official the authority to make the threshold determination whether to resist disclosure of official information in the hands of the Department. *Touhy's* point that the department head is entitled to enforce centralized decisionmaking applies without regard to the setting in which the information will be divulged.

Finally, we address briefly a point strongly urged by the dissent. The last sentence of the housekeeping statute provides: "This section does not authorize withholding information from the public or limiting the availability of records to the public." 5 U.S.C. § 301. This sentence was added in 1958, and the dissent cites legislative history indicating that the amendment was adopted in response to the executive's increasing use of the housekeeping statute as a source of executive privilege. *See* H.R. No. 1461, 85th Cong.2d . Sess. (1958), *reprinted in* 1958 U.S.C.C.A.N. 3352. That point is most certainly correct, but it does not address the question presented in this case or in *Touhy:* how is the validity of an assertion of executive privilege to be contested? *Touhy* held that it is *not* to be contested originally in a contempt proceeding against a subordinate who has been denied permission to respond to a subpoena. The House Report discussing the 1958 amendment is replete with statements that the housekeeping statute is not to be used as a source of executive privilege, but the report never states that the purpose of the amendment is to overrule *Touhy* and the amendment has never been so construed by courts. If the action of a department head is contested directly, as *Touhy* requires, then the 1958 amendment assures that the department head may not base an assertion of privilege on the housekeeping statute.

We understand the dissenting opinion's point that it may be more cumbersome to challenge an assertion of privilege by an APA suit or mandamus action, but *Touhy, Sackett* and *Swett* preclude litigants and courts from first pursuing the option of contempt proceedings against subordinate officials who have been denied permission to respond to a subpoena. We follow those cases, and go no further "for the case as we understand it raises no question as to the power of the Attorney General himself to make such a refusal." *Touhy,* 340 U.S. at 467, 71 S.Ct. at 419.

## CONCLUSION

The orders of the district court are **REVERSED.**

NORRIS, District Judge dissenting:

This case presents the question whether an employee of a federal agency may lawfully refuse to obey a subpoena *ad testificandum* in reliance upon an agency regulation promulgated pursuant to the federal housekeeping statute, 5 U.S.C. § 301.

I

The plaintiffs in this civil rights action allege that officers of the Los Angeles Police Department used excessive force in fatally shooting three suspects and wounding a fourth following a robbery of a fast food restaurant. On the first day of trial, plaintiffs subpoenaed FBI agent Richard Boeh as a witness. The government moved to quash the subpoena primarily on the ground that Agent Boeh had not been authorized to testify as required by the Department of Justice's housekeeping regulation. Before ruling on the motion to quash, the district court ordered Boeh to appear *in camera* and answer questions that would enable the court to decide whether Agent Boeh should be required to testify, and if so, to what extent. When Boeh refused to answer any questions, the court denied the motion to quash and ordered Boeh to testify in open court. When Boeh again refused, the district court held him in contempt both for refusing to answer the court's questions *in camera* and for re-

tion in *Touhy,* unlike section 16.22(a), authorized certain *in camera* disclosures. *See Touhy,* 340

U.S. at 466, 468, 71 S.Ct. at 418, 419.

fusing to testify in open court. In denying the government's motion to quash, the district court said, "[t]he Justice Department has made a decision to put its own interests above the interest of justice in this case." January 23, 1992 Transcript at 14.

On appeal, the government seeks to reverse the contempt orders on the ground that the district court had no jurisdiction to hold Boeh in contempt because the Department of Justice's housekeeping regulation prohibited him from disclosing any information acquired in performing his official duties.[1] As the government puts it, "[t]he only question before this Court is whether the district court had jurisdiction to hold Agent Boeh in contempt." Appellant's Opening Brief at 8.

The government argues that the district court had no power to hold Agent Boeh in contempt as a recalcitrant witness because he was not authorized to testify under 28 C.F.R. § 16.22(a),[2] a regulation promulgated pursuant to the so-called "housekeeping statute," 5 U.S.C. § 301.[3] I believe § 301 provides no authority for agency heads to create a form of executive privilege to withhold evidence from the courts. The housekeeping statute was intended to give agency heads the authority to prescribe regulations for the administration of the agency, and nothing more. To interpret it as authorizing agencies to withhold evidence from federal courts not only goes far beyond the text and purpose of the statute, it raises a serious separation of powers question. As the Supreme Court has said, "[j]udicial control over the evidence in a case cannot be abdicated to the caprice of executive officers." *United States v. Reynolds,* 345 U.S. 1, 9–10, 73 S.Ct. 528, 533, 97 L.Ed. 727 (1953). That is exactly the effect of the stand taken by the Attorney General in this case. If allowed to stand, today's decision "would upset the constitutional balance of 'a workable government' and gravely impair the role of the courts under Art. III." *United States v. Nixon,* 418 U.S. 683, 707, 94 S.Ct. 3090, 3107, 41 L.Ed.2d 1039 (1974).

## II

### A

The government relies principally on *United States ex rel. Touhy v. Ragen,* 340 U.S. 462, 71 S.Ct. 416, 95 L.Ed. 417 (1951), in support of its contention that § 301 authorized the Attorney General's actions. *Touhy,* however, does not control this case. The question addressed in *Touhy* was whether a Justice Department official could refuse to obey a subpoena *duces tecum* ordering the production of agency papers in his possession. In refusing to obey, the subordinate official relied upon on a Justice Department regulation that barred employees from producing records unless they had express authority to do so. In resolving the issue, the Court distinguished between a far-reaching question, (1) "whether it is permissible for the Attorney General to make a conclusive determination not to produce records," and a narrow one, (2) "whether his subordinates in accordance with the order may lawfully de-

---

1. Before the district court the government also argued that Agent Boeh should not be required to testify because his testimony would have been inadmissible on a variety of evidentiary grounds. On appeal, the government does not rely upon these other points raised in its motion to quash. Nor could it. By refusing to answer even foundational questions by the court *in camera,* Agent Boeh provided no evidentiary basis for the court to decide questions such as whether Boeh's testimony would be inadmissible hearsay. Apparently the government expected the district court to rely on faith, not evidence, in quashing the subpoena on those grounds.

2. The regulation says: "In any federal or state case or matter in which the United States is not a party, no employee ... of the Department of Justice shall, in response to a demand, produce any material contained in the files of the Department, or disclose any information relating to or based upon material contained in the files of the Department, or disclose any information or produce any material acquired as part of the performance of that person's official duties or because of that person's official status without prior approval of the proper Department official...."

3. The statute reads in its entirety: "The head of an Executive department or military department may prescribe regulations for the government of his department, the conduct of its employees, the distribution and performance of its business, and the custody, use, and preservation of its records, papers, and property. This section does not authorize withholding information from the public or limiting the availability of records to the public."

cline to produce them in response to a subpoena *duces tecum." Id.* at 467, 71 S.Ct. at 419.

The Court considered only the narrow question, holding that an agency head could withhold from subordinates the authority to produce documents in response to a subpoena *duces tecum.* The Court declined to reach the far-reaching question:

> We find it unnecessary, however, to consider the ultimate reach of the authority of the Attorney General to refuse to produce at a court's order the government papers in his possession, for the case as we understand it raises no question as to the power of the Attorney General to himself make such a refusal. The Attorney General was not before the trial court.

*Id.*

Thus *Touhy* did not hold that the Attorney General can arrogate to himself the authority to override the subpoena power of Article III courts by withholding evidence within his administrative control. *Touhy* instead held that the Attorney General may, "as a matter of internal administration," *Touhy,* 340 U.S. at 471, 71 S.Ct. at 421 (Frankfurter, J., concurring), promulgate regulations under the housekeeping statute designating which agency personnel are authorized to produce agency records. If an agency head withholds from subordinates authority to produce documents that have been subpoenaed, as the Attorney General did in *Touhy,* the agency head *himself* may still be subpoenaed. Because *Touhy* left undecided the question whether the Attorney General himself could lawfully refuse to obey a court order to produce the documents, *Touhy,* 340 U.S. at 467, 71 S.Ct. at 418–19, *see also id.* at 472, 71 S.Ct. at 421 (Frankfurter, J., concurring), it left intact the judicial power to subpoena evidence, whether documentary or testimonial, that the courts determine is needed to decide cases. Just as *Touhy* did not decide whether "it is permissible for the Attorney General to make a conclusive determination not to produce records," *id.* at 467, 71 S.Ct. at 418–19, it did not decide whether the Attorney General could make a conclusive determination not to allow the testimony of a subordinate.

In this case, the Attorney General made just such a conclusive determination, thereby presenting us with the far-reaching question not decided in *Touhy.* To understand why this case presents the question left unanswered in *Touhy* requires a review of the difference between a subpoena *duces tecum* and a subpoena *ad testificandum*—the difference, if you will, between documentary evidence and live testimony. The ability to produce documents in response to a subpoena *duces tecum* is impersonal. It is, as Justice Frankfurter said, a matter of "internal administration" as to who is authorized by an agency head to produce documents. Which agency employees may produce documents is a matter suitable for treatment in agency regulations promulgated pursuant to the "housekeeping" statute. Because the head of an agency cannot divest herself of the authority to control internal documents, she always has the ability to herself comply with a subpoena *duces tecum* served upon *her.* Her personal knowledge of the contents of the documents is irrelevant; all that matters is that they are within her control.

In contrast, the ability to produce testimony is personal. Because the testimony must be based upon the witness' personal knowledge, it can only be produced by the witness himself. Only Agent Boeh can comply with the subpoena *ad testificandum* at issue here. Moreover, nobody other than Agent Boeh himself may be subpoenaed to produce Agent Boeh's testimony. Not even the Attorney General herself can be subpoenaed for that purpose. The Federal Rules of Civil and Criminal Procedure recognize this reality, and make clear that a subpoena may issue only for the testimony of the "person to whom it is directed." Fed.R.Civ.P. 45(a)(1)(C); Fed.R.Crim.P. 17(a). This is not a subpoena *duces tecum* case. The Attorney General cannot produce Agent Boeh's testimony as though it were a document. When the subpoena is *ad testificandum,* there can be no pinch hitters. The Attorney General has the authority to control the production of agency documents, but the Attorney General has no power to compel a subordinate to obey a subpoena *ad testificandum.* The most the Attorney General can do is disci-

pline him for insubordination if he refuses to testify. *But the Attorney General cannot use the ultimate weapon of contempt to enforce the subpoena; he cannot put Agent Boeh in jail for refusing to testify.* Because an agency head cannot produce a subordinate's testimony the way he can produce agency documents, the far-reaching question left open in *Touhy* is squarely presented by the Attorney General's refusal to authorize Agent Boeh to testify: may the head of a federal agency make "a conclusive determination" not to produce evidence sought by a federal court? [4]

**B**

Just as *Touhy* does not control this case, nor do the other cases cited by the government. Most, like *Touhy*, involve subpoenas *duces tecum*.[5] The rest are inapposite for they involve the power of *state* courts to subpoena federal officials. Our decision in *Swett v. Schenk,* 792 F.2d 1447 (9th Cir. 1986), falls in this category.[6] *Swett* involved a California Superior Court's subpoena of a National Transportation Safety Board investigator. The state court's subsequent contempt action was removed to district court

and dismissed. We held that "the *state court* lacked jurisdiction to use contempt procedures against [the investigator]." 792 F.2d at 1451 (emphasis added). If the state court lacked the power to subpoena federal officials and to cite them for contempt, then so did the district court, because "removal jurisdiction is derivative [and] the district court acquired no jurisdiction on removal." *Id.* The limitations on a state court's subpoena and contempt powers stem from the sovereign immunity of the United States and from the Supremacy Clause. *Boron Oil Co. v. Downie,* 873 F.2d 67, 71 (4th Cir.1989). Such limitations do not apply when a *federal* court exercises its subpoena powers against federal officials. Because the instant case involves a federal court subpoena, *Swett* is inapposite.

In sum, because neither *Touhy* nor *Swett* nor any other case is controlling authority, we are not barred by stare decisis from deciding the question presented here.

**III**

I now turn to the heart of the matter: does the housekeeping statute in fact authorize agency heads to adopt an executive privilege immunizing subordinates from the sub-

---

**4.** The majority maintains that it does not reach the question left open in *Touhy* because its holding is limited to the conclusion that "plaintiffs selected an improper method of attempting to compel Boeh's testimony." Opinion at 764. *See also* Opinion at 764 n. 4. According to the majority, Gomez has available to him alternative means of obtaining Boeh's testimony, either by filing a mandamus action against the Attorney General or by filing suit under the Administrative Procedure Act (APA) seeking a declaratory judgment invalidating the application of the housekeeping regulation. *See* Opinion at 764 n. 3.

Neither route is an acceptable substitute to the time-honored means of obtaining a witness's testimony by serving him with a subpoena *ad testificandum,* backed up by the court's power of contempt. If Gomez had a right to Boeh's testimony, he had a right to obtain it when he needed it, which in this case was immediately, while the trial was still going on. Forcing Gomez to file a separate mandamus action or a cumbersome APA suit in the middle of his civil rights trial is so burdensome that it effectively eviscerates his right to obtain Boeh's testimony.

**5.** *Boske v. Comingore,* 177 U.S. 459, 20 S.Ct. 701, 44 L.Ed. 846 (1900), is also a document production case, which held that the Secretary of the

Treasury "may take from a subordinate ... all discretion as to permitting the records in his custody to be used for any other purpose than the collection of revenue, and reserve for his own determination all matters of that character." *Id.* at 470, 20 S.Ct. at 705. As Justice Frankfurter noted, "[t]here is not a hint in the *Boske* opinion that the Government can shut off an appropriate judicial demand for such papers." *Touhy,* 340 U.S. at 472, 71 S.Ct. at 421. Other cases cited by the government are also document production cases and rest on the narrow holdings of *Touhy* and *Boske.* *See Ex Parte Sackett,* 74 F.2d 922 (9th Cir.1935); *Saunders v. Great Western Sugar Co.,* 396 F.2d 794 (10th Cir.1968); *Smith v. C.R.C. Builders Co.,* 626 F.Supp. 12 (D.Colo. 1983). In *Sackett,* we explicitly noted that "[w]hether or not the Attorney General could be compelled to produce such records in response to a subpoena or to testify concerning them is a matter which is not involved [in this case]." 74 F.2d at 924.

**6.** *See also Boron Oil Co. v. Downie,* 873 F.2d 67, 70–71 (4th Cir.1989); *Reynolds Metals Co. v. Crowther,* 572 F.Supp. 288, 291 (D.Mass.1982) ("[I]t is unnecessary to determine under what circumstances a federal court could compel a federal employee to give testimony contrary to instructions from the head of a department.").

poena power of Article III courts? Consider first the text of the statute. *Hughey v. United States,* 495 U.S. 411, 415, 110 S.Ct. 1979, 1982, 109 L.Ed.2d 408 (1990) ("As in all cases involving statutory interpretation, we look first to the language of the statute itself."). Says Congress,

> The head of an Executive department or military department may prescribe regulations for the government of his department, the conduct of its employees, the distribution and performance of its business, and the custody, use, and preservation of its records, papers, and property. *This section does not authorize withholding information from the public or limiting the availability of records to the public.*

5 U.S.C. § 301 (emphasis added). True to its purpose as a housekeeping statute, the text does nothing more than give agency heads the authority they need to govern their agencies: to regulate employees, manage agency business, and control agency papers and property. Painted in broad strokes, the statute contemplates great executive discretion. But that discretion is not unbounded, for it is explicitly restricted in a critical respect: "This section does not authorize withholding information from the public or limiting the availability of records to the public." Withholding information from the public is, of course, precisely what the Attorney General is trying to do in this case. Here, by refusing to authorize Agent Boeh to respond to the court's subpoena, the Attorney General has tried to deny plaintiff Gomez, a member of the public, access to the information that only Agent Boeh can provide—his personal knowledge of matters relevant to Gomez' civil rights action. The text of the housekeeping statute thus expressly forbids an agency head from doing what the Attorney General is trying to do here. The statute cannot be read as authorizing agency heads to adopt regulations creating an executive privilege not to testify. It cannot be read as supporting the government's argument that an agency head can, by not authorizing a subordinate to testify, strip the district court of Article III power to enforce its subpoena.

The legislative history of § 301 reinforces this reading of the text. *See Conroy v. Aniskoff,* —— U.S. ——, ——, 113 S.Ct. 1562, 1566, 123 L.Ed.2d 229 (1993) (examining legislative history even in case where text is unambiguous and unequivocal). The original version of the housekeeping statute did not include the statement that the statute does not authorize withholding information from the public. That sentence was added in 1958. The House report accompanying the amendment explained in some detail that the proposed amendment was a response to the executive's increasing use of the housekeeping statute as a basis for withholding information from the public. H.R. No. 1461, 85th Cong.2d Sess. (1958), *reprinted in* 1958 U.S.C.C.A.N. 3352. According to the House report, the original housekeeping statute was only intended to "help General Washington get his administration underway by spelling out the authority for executive officials to set up offices and file Government documents." *Id.* at 3352. Over time, however, agencies began citing the statute as authority for their decision to withhold information from the public, particularly litigants and the press. *Id.* Congress opposed this use of the statute, instead thinking that executive privileges must be based on specific congressional authorization after a congressional determination that a particular area of information must be closed to the public. *Id.* According to Congress, the housekeeping statute had "become a convenient blanket to hide anything Congress may have neglected or refused to include under specific secrecy laws." *Id.* at 3353. This result, said the report, "would have aroused Madison, Jefferson, Mason and the rest of the statesmen who put so much trust in popular rights to information." *Id.* (quoting congressional witness' testimony). In sum, says the report, "concealment has been the result of the application" of the housekeeping statute, and "the purpose of this bill is to correct that situation." *Id.* While I am cognizant of the criticism that legislative history is frequently indeterminate, *Conroy,* at ——, 113 S.Ct. at 1567 (Scalia, J., concurring), this is not such a case. Here, the legislative history is as crystal clear as the text of the statute itself: both compel the conclusion that § 301 does not

support the government's claim that an agency head may withhold testimony from a court at its discretion.[7]

I note in closing that my reading of § 301 does not prevent an agency head from asserting various privileges. To the contrary, this appeal would probably have been unnecessary had the government allowed Boeh to testify *in camera* and then interposed objections or claims of privilege on a question-by-question basis, giving the district court the opportunity to rule whether the witness should be compelled to provide specific testimony. Just such an approach was suggested by the district court in response to the government's claim that if Agent Boeh testified he would be forced to violate the secrecy of the grand jury and disclose the identity of a confidential informant. Said the district court, "I made it crystal clear to you that you can stand there right next to [Agent Boeh] if he wants to claim the ... privilege, and every time there's a specific question asked, if you think it would violate any of the specific prohibitions, you have only to tell me. It's easy enough, but you haven't done that." January 30, 1992 Transcript at 14. Instead of allowing the court to hear Boeh's testimony and rule on whether it was privileged, the government simply made the blanket assertion that § 16.22(a) deprived the district court of "jurisdiction" to enforce its subpoena. This the government cannot do. While the government retains its authority to assert various privileges, it cannot, as it tried to do here, fashion additional privileges out of the cloth of the housekeeping statute.

## IV

The government's attempt to deprive the district court of its Article III authority to subpoena Agent Boeh violates the fundamental principle that "the public ... has a right to every man's evidence." *United States v. Bryan*, 339 U.S. 323, 331, 70 S.Ct. 724, 730, 94 L.Ed. 884 (1950) (quoting Wigmore, *Evidence* § 2192 (3d ed.)). Exceptions "to the demand for every man's evidence are not lightly created nor expansively construed, for they are in derogation of the search for the truth." *Nixon*, 418 U.S. at 710, 94 S.Ct. at 3108. As an encroachment on the Article III judicial power, the exception claimed by the Attorney General here raises serious separation of powers questions. *See id.* at 707, 94 S.Ct. at 3107 (unqualified privilege conflicts with function of the courts under Article III). Even assuming Congress has the authority to grant such power to the executive, we should not impute such an intent to Congress unless it is clearly expressed. Here, Congress has not only declined to express such intent, it has, in both the text and legislative history of the statute, clearly expressed a contrary intent.

In sum, the housekeeping statute does not authorize agency heads to create a form of executive privilege that immunizes subordinates from the reach of an Article III court's power to issue subpoenas *ad testificandum*. Accordingly, I would affirm the district court's orders denying the motion to quash and holding Agent Boeh in contempt of court.

---

7. Every commentator that I am aware of shares this reading of § 301. *See* Note, *Touhy and the Housekeeping Privilege: Dead but not Buried?*, 70 Tex.L.Rev. 685, 689 (1992) (the proposition that "a government agency may withhold documents or testimony at its discretion [ ] simply is not good law and hasn't been since 1958."); Note, *Every Man's Evidence and the Ivory Tower Agencies: How May a Civil Litigant Obtain Testimony From an Employee of a Nonparty Federal Agency?*, 59 Geo.Wash.L.Rev. 1647, 1656 (1991) (after the 1958 amendment "the Housekeeping Statute does *not* authorize nondisclosure regulations") (emphasis in original); Gerald Wetlaufer, *Justifying Secrecy: An Objection to the General Deliberative Privilege*, 65 Ind.L.J. 845, 869 (1990) ("By this Act, Congress eliminated any broad privilege-in-effect that might have been approved by Justice Reed's decision in *Touhy*."); Don Lively, *Government Housekeeping Authority: Bureaucratic Privileges Without a Bureaucratic Privilege*, 16 Harv.C.R.–C.L.L.Rev. 495, 500 (1981) ("As the legislative history accompanying the 1958 amendment to the housekeeping statute shows, Congress intended that the statute itself should not double as a form of privilege.").