**EXXON SHIPPING CO.; Exxon Corporation, Plaintiffs–Appellants,**

**and**

**Alyeska Pipeline Service Company, Plaintiff,**

v.

**UNITED STATES DEPARTMENT OF INTERIOR; Department of Agriculture; Secretary of Health & Human Services; United States Department of Commerce; National Marine Fisheries Service; National Oceanic and Atmospheric Administration, et al., Defendants–Appellees.**

No. 94–35140.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted July 13, 1994.

Decided Aug. 29, 1994.

---

Andrew C. Mergen, U.S. Dept. of Justice, Washington, DC, for defendants-appellees.

Before: A. GOODWIN, D.W. NELSON, and HALL, Circuit Judges.

GOODWIN, Circuit Judge:

Exxon Corp. and Exxon Shipping Co. ("Exxon") appeal the dismissal of their complaint against five federal administrative agencies and their employees seeking to compel discovery. Exxon made the discovery requests as part of its defense in an underlying damage action arising out of the *Exxon Valdez* oil spill.

The government instructed eight federal employees not to submit to depositions and restricted the testimony of two others. Exxon contends that the government's action violated the Federal Housekeeping Statute, 5 U.S.C. § 301, and the Administrative Procedure Act (APA), 5 U.S.C. § 706(2)(A). The district court found that § 301 authorized the agencies' actions, and that the actions were not arbitrary or capricious under § 706(2)(A). We reverse and remand.

I.

In 1989, commercial fishermen, landowners, local governments, businesses, and others sued Exxon seeking compensatory and punitive damages for injuries they allegedly suffered as a result of the *Exxon Valdez* oil spill. *SeaHawk Seafoods, Inc. v. Exxon Corp.*, No. A89–0095–CV (D. Alaska); *Exxon Valdez Litigation*, 3AN–89–2533CI (Alaska Sup.Ct.).

Between June and November 1992, Exxon issued a notice of deposition and subpoena to ten federal employees who work for five federal agencies.[1] Exxon claimed that the em-

E. Edward Bruce, Robert A. Long, Jr., John F. Duffy, Covington & Burling, Washington, DC, for plaintiffs-appellants.

---

1. The 10 employees are: 1) Donald G. Callaway, former Chief of the Social and Economic Studies Unit, Department of the Interior (DOI); 2) Dr. Thomas P. Nighswander, director of the Alaska Native Medical Center, Department of Health and Human Services (HHS); 3) Carl Lautenberger, environmental protection specialist, Environmental Protection Agency; 4) Cecil R. Kuhn, subsistence planning coordinator, Department of Agriculture; 5) Leo Keeler, real estate specialist, DOI; 6) David Kennedy, director, Hazardous Material and Response and Assessment Division, Department of Commerce; 7) Steven Pennoyer, regional director, National Marine Fisheries Service, Department of Commerce; 8) Edward F. Spang, DOI; 9) Richard S. Pospahala, assistant

ployees, through their work with the federal government, had obtained information central to the underlying litigation. Such information purportedly included the extent of damage to Alaska's natural resources, including bird and animal populations, as a result of the spill.[2] However, the government did not comply with Exxon's discovery requests, nor did it file a motion to quash the subpoenas. Instead, the agencies simply instructed eight of the ten employees not to submit to a deposition. Two other employees appeared at the scheduled depositions and gave testimony on certain topics, but were instructed not to answer questions on other matters.

In February 1993, Exxon filed this complaint, alleging that: 1) the government's refusal to provide the requested discovery violated the Federal Rules of Civil Procedure and the U.S. Constitution because the United States was a de facto party to the action; 2) the agencies' actions were not authorized by 5 U.S.C. § 301, or federal regulations promulgated pursuant to that statute; and 3) the agencies' actions were unlawful under the APA, 5 U.S.C. § 702 *et seq.* In January 1994, the district court rendered judgment for the United States on all three claims. Exxon appeals on its second and third claim. Trial in federal district court began on May 2, 1994 in the underlying civil suit and was still ongoing as of this writing.

## II.

■ In declining the deposition requests, the five federal agencies relied on regulations promulgated under 5 U.S.C. § 301. These internal regulations generally provide that an employee may not be deposed unless an agency head authorizes it.[3]

The government argues, and the district court agreed, that § 301 authorizes agency heads to prohibit their employees from testifying in litigation in which the United States is not a party.[4] As authority, the court cited *United States ex. rel. Touhy v. Ragen,* 340 U.S. 462, 71 S.Ct. 416, 95 L.Ed. 417 (1951). However, *Touhy* does not support as broad a reading as the agencies seek. In *Touhy,* the Supreme Court ruled that an FBI agent could not be held in contempt for refusing to obey a subpoena *duces tecum* when the Attorney General, acting pursuant to valid federal regulations governing the release of official documents, had ordered him to refuse to comply. *Id.* at 469, 71 S.Ct. at 420. However, the Court specifically refused to reach the question of the agency head's power to withhold evidence from a court without a specific claim of privilege. *Id.* at 472, 71 S.Ct. at 421 ("We find it unnecessary ... to consider the ultimate reach of the authority of the Attorney General to refuse to produce at a court's order the government papers in his possession."); *see also id.* at 471, 71 S.Ct. at 421 (Frankfurter, J., concurring); *In re Recalcitrant Witness Richard Boeh v. Daryl Gates,* 25 F.3d 761, 764 & n. 4 (9th Cir.1994) (noting that *Touhy* did not decide the legality of agency heads' executive privilege claim).

At issue in *Touhy* was whether lower federal officials could be held in contempt for refusing to comply with a subpoena when

regional director for subsistence, United States Fish and Wildlife Service (FWS), DOI; and 10) Karen Oakley, an employee of the FWS.

2. Exxon's complaint alleges that Callaway, Spang, Pospahala, and Kuhn have "critical information" concerning "the extent to which the oil spill impaired the ability of Alaska Natives to carry out their traditional subsistence activities." Compl. at 7. The complaint also alleges that Nighswander, as chairman of the Oil Spill Health Task Force, has information that would "tend to show that plaintiffs' claims about the lack of safety of subsistence food are false or greatly exaggerated," *id.* at 9, and that Keeler, an employee of the Bureau of Land Management, has similar "critical" information about land use

that is central to the calculation of damages, *id.* at 10.

3. The regulations generally provide that agency heads may authorize such testimony when it is in the interests of the agency. *See* 45 C.F.R. 2.1–2.6 (DOI); 7 C.F.R. 1.210–1.218 (USDA); 40 C.F.R. 2.401–2.406 (EPA); 15 C.F.R. 15.1–15a.7 (Commerce); 45 C.F.R. 2.1–2.6 (HHS).

4. When the government is named as a party to an action, it is placed in the same position as a private litigant, and the rules of discovery in the Federal Rules of Civil Procedure apply. *See United States v. Procter & Gamble Co.,* 356 U.S. 677, 681, 78 S.Ct. 983, 985–86, 2 L.Ed.2d 1077 (1958); *Mosseller v. United States,* 158 F.2d 380 (2d Cir.1946).

agency regulations prohibited them from disclosing relevant documents. Here, unlike in *Touhy*, the agencies themselves are named defendants. Thus, the ultimate question of federal agencies' authority to withhold discovery, including deposition testimony, is squarely at issue.

Section 301 does not, by its own force, authorize federal agency heads to withhold evidence sought under a valid federal court subpoena. Section 301 reads:

> The head of an Executive department or military department may prescribe regulations for the government of his department, the conduct of its employees, the distribution and performance of its business, and the custody, use, and preservation of its records, papers, and property. *This section does not authorize withholding information from the public or limiting the availability of records to the public.*

5 U.S.C. § 301 (1982) (emphasis added). The second sentence of § 301 was added by Congress in 1958. According to the legislative history, Congress was concerned that the statute had been "twisted from its original purpose as a 'housekeeping' statute into a claim of authority to keep information from the public and, even, from the Congress." 2 U.S.Code Cong. & Admin.News 3352 (1958); *see Chrysler Corp. v. Brown*, 441 U.S. 281, 310, 99 S.Ct. 1705, 1721–22, 60 L.Ed.2d 208 (1978). The House Report accompanying the 1958 amendment explained that the proposed amendment would "correct" a situation that had arisen in which the executive branch was using the housekeeping statute as a substantive basis to withhold information from the public. H.R. No. 1461, 85th Cong., 2d Sess. (1958), *reprinted in* 1958 U.S.C.C.A.N. 3352, 3353.

The Report noted that the original housekeeping statute, enacted in 1789, was enacted "to help General Washington get his administration underway by spelling out the authority for executive officials to set up offices and file Government documents." *Id.* at 3352.

The statute was apparently first used to deny information to the public in 1877, when a California newspaperman sought politically sensitive files from the Hayes Administration. *Id.* Over the years, executive officers "gradually moved in" and the housekeeping statute became a "convenient blanket to hide anything Congress may have neglected or refused to include under specific secrecy laws." *Id.* at 3353. According to the House Report, the purpose of the 1958 amendment was to "correct that situation." *Id.*

In *Chrysler Corp. v. Brown*, 441 U.S. at 310, 99 S.Ct. at 1722, the Supreme Court acknowledged that § 301 did not provide "substantive rules" regulating disclosure of government information. The Court held that the statute is simply "a 'housekeeping statute,' authorizing what the APA terms 'rules of agency organization, procedure or practice' as opposed to 'substantive rules.'" *Id.* The Court noted that nothing in § 301's legislative history indicated that Congress intended the statute to be a grant of authority to *withhold* information from the public. *Id.* Subsequent judicial decisions interpreting § 301 have noted that the 1958 amendment explicitly sought to eliminate any perception that the section created an executive privilege. *Harvey Aluminum v. NLRB*, 335 F.2d 749, 755 (9th Cir.1964); *NLRB v. Capitol Fish Co.*, 294 F.2d 868, 875 (5th Cir. 1961).[5]

The government also argues that § 301 authorizes it to instruct its employees not to testify in judicial proceedings because § 301 grants it authority to control "the conduct of its employees." However, we have already held that in interpreting § 301, we will not distinguish between subpoenas seeking testimony and documentary evidence. *In re Recalcitrant Witness Boeh*, 25 F.3d at 766 (holding that *Touhy* applies in cases involving a subpoena *ad testificandum*). "There is no difference ... between the power of an agency head to specify what records a subordinate may release and the power to specify what information a subordinate may release

---

**5.** The government attempts to distinguish these cases on the ground that the government was a party to the underlying action and thus, disclosure was warranted; however, that fact does not affect the courts' undeniable conclusion that § 301 itself does not create a privilege of nondisclosure.

through testimony." *Id.* Furthermore, the 1958 amendment's legislative history supports the argument that Congress intended the statute to cover government employees who are subpoenaed to testify. *See* H.R.Rep. No. 1461 at 2.

Thus, neither the statute's text, its legislative history, nor Supreme Court case law supports the government's argument that § 301 authorizes agency heads to withhold documents or testimony from federal courts.[6]

## III.

■ The government also contends that the authority of agency heads to conclusively determine whether government employees may testify is "at bottom" controlled by principles of sovereign immunity. Appellee's Br. at 18. The government cites a Fourth Circuit decision holding that sovereign immunity bars a suit compelling a federal official to testify in a state civil action not involving the United States. *Boron Oil Co. v. Downie,* 873 F.2d 67, 69 (4th Cir.1989) (reasoning that an action seeking specific relief against a federal official, acting within the scope of his delegated authority, is an action against the United States) (citing *Larson v. Domestic & Foreign Commerce Corp.,* 337 U.S. 682, 688, 69 S.Ct. 1457, 1460–61, 93 L.Ed. 1628 (1949)). However, *Downie* involved the power of a state court to subpoena federal officials.[7] The

*Downie* court held that the doctrine of sovereign immunity precludes *the state court,* and the federal court that gained limited jurisdiction on removal, from compelling Downie, an EPA investigator, to testify contrary to his agency's instructions. 873 F.2d at 69.[8] "The limitations on a state court's subpoena and contempt powers stem from the sovereign immunity of the United States and from the Supremacy Clause. Such limitations do not apply when a *federal* court exercises its subpoena power against federal officials." *See In re Recalcitrant Witness Boeh,* 25 F.3d at 770 (Norris, J., dissenting) (citation omitted).

Moreover, under the government's argument, sovereign immunity would authorize the executive branch to make conclusive determinations on whether federal employees may comply with a valid federal court subpoena. Such a broad definition would raise serious separation of powers questions. As the Supreme Court has said, "judicial control over the evidence in a case cannot be abdicated to the caprice of executive officers." *United States v. Reynolds,* 345 U.S. 1, 9–10, 73 S.Ct. 528, 532–33, 97 L.Ed. 727 (1953). We decline to hold that federal courts cannot compel federal officers to give factual testimony. *Cf. Northrop v. McDonnell Douglas Corp.,* 751 F.2d 395, 398 n. 2 (D.C.Cir.1984)

---

6. Every commentator we are aware of who has addressed the issue has reached the same conclusion. *See* 8 Charles A. Wright & Arthur R. Miller, *Federal Practice & Procedure,* § 2019, at 165–66 (1970 & 1994 Supp.) (The 1958 amendment "has made it clear beyond doubt that the 'housekeeping' statute does not in itself create a privilege when no privilege would otherwise exist."); Gregory S. Coleman, Note, *Touhy and the Housekeeping Privilege: Dead but not Buried?"* 70 Tex.L.Rev. 685, 689 & n. 20 (1992) ("The proposition for which *Touhy* is often cited—that a government agency may withhold documents or testimony at its discretion—simply is not good law and hasn't been since 1958."); Robert R. Kiesel, Note, *Every Man's Evidence and the Ivory Tower Agencies: How May a Civil Litigant Obtain Testimony From an Employee of a Nonparty Federal Agency?,* 59 Geo.Wash.L.Rev. 1647, 1656 (1991) (after the 1958 amendment "the Housekeeping Statute does not authorize nondisclosure regulations"); Don Lively, *Government Housekeeping Authority: Bureaucratic Privileges Without a Bureaucratic Privilege,* 16 Harv.C.R.–

C.L.L.Rev. 495, 500 (1981) ("As the legislative history accompanying the 1958 amendment to the housekeeping statute shows, Congress intended that the statute itself should not double as a form of privilege.").

7. Our decision in *Swett v. Schenk,* 792 F.2d 1447 (9th Cir.1986), similarly falls in this category. *Swett* involved a California Superior Court's subpoena of a National Transportation Safety Board investigator. The state court's subsequent contempt action was removed to district court and dismissed. We affirmed, holding that "the state court lacked jurisdiction to use contempt procedures against [the investigator]." *Id.* at 1451.

8. To the extent that *Downie* can be read to rely on *Touhy* for its holding that a federal agency may not be compelled to obey a subpoena, we decline to follow it. *See Downie,* 873 F.2d at 69 (citing *Touhy,* 340 U.S. 462, 71 S.Ct. 416). As discussed above, *Touhy* did not address the executive branch's authority to refuse to comply with a valid federal court subpoena.

(declining to "graft onto discovery law a broad doctrine of sovereign immunity").[9]

The government's argument would also violate the fundamental principle that "'the public ... has a right to every man's evidence.'" *United States v. Bryan,* 339 U.S. 323, 331, 70 S.Ct. 724, 730, 94 L.Ed. 884 (1950) (quoting Wigmore, Evidence § 2192 (3d ed.)). Exceptions "to the demand for every man's evidence are not lightly created nor expansively construed, for they are in derogation of the search for the truth." *United States v. Nixon,* 418 U.S. 683, 710, 94 S.Ct. 3090, 3108, 41 L.Ed.2d 1039 (1974). Furthermore, the Federal Rules of Civil Procedure strongly favor full discovery. "Parties may obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action." Fed.R.Civ.P. 26(b)(1).

Nevertheless, the government contends that allowing parties unbridled discretion to call upon their employees as witnesses in private disputes will turn the federal government into a "speakers' bureau for private litigants." Appellee's Br. at 9. It notes that federal agencies receive hundreds of requests each year from private litigants for federal officials to testify about information they obtain in the course of their employment. At oral argument, the government's attorney stated that the National Weather Service alone receives hundreds of requests a year from private litigants seeking to introduce evidence about weather patterns in cases as routine as minor car accidents.

The government argues that it has a valid interest in conserving its employee resources and in "minimiz[ing] governmental involvement in controversial matters unrelated to official business." *Downie,* 873 F.2d at 70 (citations omitted). It argues that if federal officials are routinely compelled to testify in civil actions in which the United States is not a party, "significant loss of manpower hours would predictably result and agency employees would be drawn from other important agency assignments." *Id.*

We acknowledge the government's serious and legitimate concern that its employee resources not be commandeered into service by private litigants to the detriment of the smooth functioning of government operations. However, we are confident that district courts can, and will, balance the government's concerns under the general rules of discovery. The Federal Rules of Civil Procedure explicitly provide for limitations on discovery in cases such as this. Rule 26(c) and Rule 45(c)(3) give ample discretion to district courts to quash or modify subpoenas causing "undue burden." The Federal Rules also afford nonparties special protection against the time and expense of complying with subpoenas. *See* Fed.R.Civ.P. 45(c)(3)(A)(ii). In addition, the Rules can prevent private parties from exploiting government employees as tax-supported pools of experts. *See* Fed.R.Civ.P. 45(c)(3)(B)(ii), (iii) (a court may in its discretion disallow the taking of a non-retained expert's testimony unless the proponent makes a showing of *"substantial need"* that "cannot be otherwise met without undue hardship" and payment of reasonable compensation) (emphasis added). The Rules also recognize and protect privileged information. *See* Fed.R.Civ.P. 45(c)(3)(A)(iii).

In ruling on discovery requests, Rule 26(b)(2) instructs district courts to consider a number of factors relevant to the government's expressed interests.[10] For example, a court may use Rule 26(b) to limit discovery of agency documents or testimony of agency officials if the desired discovery is relatively unimportant when compared to the govern-

---

**9.** Moreover, Congress has waived the government's sovereign immunity with respect to civil actions such as this one, which seeks "relief other than money damages" and alleges that an agency or an officer within has failed to act lawfully. *See* 5 U.S.C. § 702.

**10.** The Rule provides that discovery may be limited if the court determines that
(i) the discovery sought is unreasonably cumulative or duplicative, *or is obtainable from some other source that is more convenient, less bur-*

densome, or less expensive; (ii) the party seeking discovery has had ample opportunity by discovery in the action to obtain the information sought; or (iii) *the burden or expense of the proposed discovery outweighs its likely benefit,* taking into account the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the litigation, and the importance of the proposed discovery in resolving the issues.
Fed.R.Civ.P. 26(b)(2) (emphasis added).

ment interests in conserving scarce government resources. *See, e.g., Moore v. Armour Pharmaceutical Co.,* 927 F.2d 1194, 1198 (11th Cir.1991) (considering the "cumulative impact" of repeated requests for the testimony of Center for Disease Control researchers working on a cure for the AIDS virus in upholding a decision to quash a subpoena under Rule 45).

The government is also free to raise any possible claims of privilege from testimonial compulsion that may rightly be available to it. The Federal Rules of Evidence specifically provide that common law governs privileges recognized by federal courts. Fed. R.Evid. 501. *See, e.g., United States v. Reynolds,* 345 U.S. 1, 6–7, 73 S.Ct. 528, 531, 97 L.Ed. 727 (1953) (state secrets privilege); *Northrop Corp. v. McDonnell Douglas Corp.,* 751 F.2d 395, 399 (D.C.Cir.1984) (same). Courts have also recognized a qualified executive privilege, in which the litigant's need for the information is weighed against the government interest in nondisclosure. *See* 8 Wright & Miller, *Federal Practice and Procedure,* § 2019, at 166–69 (listing cases).[11]

For the foregoing reasons, we believe that federal district courts, in reviewing subpoena requests under the federal rules of discovery, can adequately protect both an individual's right to "every man's evidence" as well as the government's interest in not being used as a "speakers' bureau for private litigants."[12]

## IV.

■ In summary, the district court erred in holding that § 301 authorizes federal

agencies to refuse to comply with proper discovery requests. Section 301 does not create an independent privilege to withhold government information or shield federal employees from valid subpoenas. Rather, district courts should apply the federal rules of discovery when deciding on discovery requests made against government agencies, whether or not the United States is a party to the underlying action. Under the balancing test authorized by the rules, courts can ensure that the unique interests of the government are adequately considered. Because of our disposition, we decline to reach Exxon's claim that the agencies' actions were arbitrary and capricious under § 706(2)(A) until after further district court review, and, if necessary, fact-finding. Thus, we remand for the court to exercise its discretion on Exxon's discovery requests.

The judgment is REVERSED and the cause is REMANDED for further proceedings.

11. The APA also authorizes judicial review of agency action that is "arbitrary, capricious, an abuse of discretion, or otherwise unlawful." 5 U.S.C. § 706(2)(A) (1982). Because § 301 provides authority for agency heads to issue rules of procedure in dealing with requests for information and testimony, an agency head will still be making the decisions on whether to comply with such requests in the first instance. Thus, review under § 706(2)(A) will be available. However, we acknowledge that collateral APA proceedings can be costly, time-consuming, inconvenient to litigants, and may "effectively eviscerate[]" any right to the requested testimony. *In re Recalcitrant Witness Boeh,* 25 F.3d at 770 n. 4 (Norris, J., dissenting) (if the plaintiff had a right to obtain the witness' testimony, "he had a right to obtain it when he needed it, which in this case was immediately, when the trial was still going

on"). Therefore, the need for district court review in such instances is all the more compelling.

12. Here, the government argued that "even if the Federal Rules did apply," Exxon would be unable to obtain the information it seeks because the company has failed to show that the testimony it seeks is necessary or that it cannot be obtained in less burdensome ways, given "the disruptive effect the depositions will have on government operations." Appellee's Br. at 21 n. 20. Although we express no opinion on this issue, reserving it instead for the district court, we note that the government does not dispute that the federal rules of discovery are sufficient to protect its stated interests.