**UNITED STATES of America**

v.

**Francis P. SALEMME, et al.**

**Cr. No. 94–10287–MLW.**

United States District Court,
D. Massachusetts.

June 6, 1997.

Anthony M. Cardinale, Boston, MA, for Robert P. DeLuca.

MaryEllen Kelleher, Law Office of Richard Egbert, Boston, MA, Anthony M. Cardinale, Boston, MA, for Francis P. Salemme, Sr.

Kenneth J. Fishman, Bailey, Fishman & Leonard, Boston, MA, Richard M. Egbert, Boston, MA, for Stephen J. Flemmi.

Michael C. Bourbeau, Boston, MA, Robert A. George, Boston, MA, for James M. Martorano.

Martin G. Weinberg, Oteri, Weinberg & Lawson, Boston, MA, Anthony M. Cardinale, Boston, MA, for John V. Martorano.

Fred M. Wyshak, Jr., U.S. Attorney's Office, Boston, MA, for U.S.

## MEMORANDUM AND ORDER

WOLF, District Judge.

### I. *Summary*

On May 22, 1997 this court allowed defendants' motions for evidentiary hearings concerning their motions to suppress certain electronic surveillance that the government proposes to introduce as evidence in this case. For the reasons described in detail in the court's forty-nine page Memorandum, in connection with those hearings the court ordered the Attorney General or her designee to disclose whether James J. "Whitey" Bulger, Angelo "Sonny" Mercurio, Robert Donati, Kenneth Guarino, and/or Anthony St. Laurant has at any time in the period from 1967 to the present served as a confidential source of information (however internally designated) for any agency, agent, or attorney of the United States Department of Justice, including but not limited to the Federal Bureau of Investigation ("FBI"). At the request of the defendants and the government the submissions relating to defendants' motion and the May 22, 1997 Memorandum and Order were placed, at least temporarily, under seal.

After requesting and receiving two extensions of time to respond, on June 3, 1997 the government, in a series of sealed submissions: (1) disclosed to defendants that Bulger was an FBI informant during a substantial part of the time during which he is alleged to have committed the crimes charged in the Fourth Superseding Indictment in this case; (2) conceded that there was a proper basis for the court to have ordered evidentiary hearings on the defendants' motion to suppress electronic surveillance; (3) respectfully declined to confirm or deny the informant status of any individual other than Bulger at the direction of Acting Deputy Attorney General Seth P. Waxman, exercising the authority vested in him by 28 C.F.R. § 16.21 *et seq.;* and (4) filed a motion and memorandum requesting that the court reconsider and revise its May 22, 1997 Memorandum and Order that the government disclose whether Mercurio, Donati, Guarino and/or St. Laurant were informants.

A hearing on the motion to reconsider, among other things, was held on June 3, 1997. Defendants oppose that motion. In addition they have moved to have the Acting Deputy Attorney General held in civil contempt for his failure to obey the May 22, 1997 Order. Defendants Francis P. Sa-

lemme, Robert DeLuca, and James Martorano have also moved to have the May 22, 1997 Order, related submissions, and transcripts of related proceedings unsealed. The government agrees to the proposed unsealing to the extent that it relates to Bulger and defendant Stephen Flemmi, but otherwise opposes it. Flemmi generally opposes the motion to unseal.

The court has seriously considered further its decision to require that the government disclose whether Mercurio, Donati, Guarino and/or St. Laurant were informants, as well as the other pending motions. For the reasons set forth below, the government's motion for relief from the Order requiring it to confirm or deny the status of certain individuals as informants is being denied. The court's May 22, 1997 Order, however, is being revised. The Acting Deputy Attorney General is now being ordered to, by 12:00 noon on June 12, 1997:(1) make the required disclosures; or (2) inform the court whether the Department of Justice agrees to the dismissal of this case or the exclusion at trial of the electronic surveillance relating to the alleged informants now at issue and any evidence derived from it, see 18 U.S.C. § 2515. The Acting Deputy Attorney General shall then also submit an affidavit and memorandum seeking to show cause why defendants' motion that he be held in civil contempt should not be granted.

In addition, the motion to unseal the May 22, 1997 Memorandum and Order is being allowed.[1] A decision on the request to unseal all related submissions and transcripts of related proceedings is being reserved pending a review of those materials.

## II. The Motion to Reconsider

After the defendants' March 11, 1997 oral motion for evidentiary hearings concerning certain electronic surveillances and, in connection with them, a statement of whether specified individuals were government informants who were not disclosed or adequately described, as required by federal law, in the applications for the Orders authorizing those electronic surveillances, the court received a series of submissions from the parties, including some government filings that were allowed to be made ex parte for the court's consideration in camera. As indicated earlier, at the request of the government and the defendants, these filings and related proceedings were not open to the public at least pending resolution of the defendants' motion. The court held eight hearings or conferences concerning defendants' motion, two of which involved only government counsel, prior to taking the matter under advisement. The court then carefully considered the positions of the parties, decided the merits of the motion, wrote a fifty page Memorandum and Order, issued the decision to the parties in a forty-nine page form that redacted certain information furnished by the government to a magistrate judge in camera, and placed that decision temporarily under seal, in meaningful measure based upon the representation of Paul Coffey, Esquire, Chief of the Organized Crime Section of the Department of Justice, that in comparable cases the government had declined to obey orders to disclose informants and either dismissed the case or, in effect, appealed those orders after being held in civil contempt. April 16, 1997 Transcript ("Tr.") at 38 (in camera colloquy between Coffey and the court).

■ The government's motion to reconsider essentially repeats and reemphasizes arguments it has unsuccessfully made previously. Nevertheless, as described in the May 22, 1997 Memorandum and Order at 13–15, the court has been, and remains, keenly sensitive to the fact that there is a public interest in maintaining the confidentiality of informants which is overcome only if a defendant has made a specific showing that "the disclosure of an informant's identity, or the contents of his communication is relevant and helpful to the defense of an accused, or is

---

1. The May 22, 1997 Memorandum and Order was amended on May 27, 1997. The version served on the parties redacted part of one footnote and all of another because the information involved had been submitted by the government to a magistrate judge for in camera consideration. The information redacted from footnote 3 concerning Bulger's status as an informant is included in the version of the May 22, 1997 Memorandum and Order, as amended on May 27, 1997, now being made part of the public record.

essential to a fair determination of a cause." *Roviaro v. United States*, 353 U.S. 53, 60–61, 77 S.Ct. 623, 628, 1 L.Ed.2d 639 (1957). *See also United States v. Formanczyk*, 949 F.2d 526, 529 (1st Cir.1991); *United States v. Estrella*, 567 F.2d 1151, 1153 (1st Cir.1977). Therefore, the court has again carefully considered the government's renewed arguments. Once again, however, the court finds that the interests favoring continued confidentiality of whether Mercurio, Donati, Guarino, and/or St. Laurant were informants are outweighed by the fact that disclosure of their status is essential to resolving substantial allegations of government misconduct which, if proven, could result in the exclusion of important evidence and, defendants will likely argue, the dismissal of this case. Therefore, the relief sought by the government is not justified.

The reasons for these conclusions remain essentially as stated in the May 22, 1997 Memorandum and Order. The court will, however, address further some of the points the government reemphasizes in its motion to reconsider.

### A. *The October 29, 1989 FBI Electronic Surveillance at 34 Guild Street*

The government "concedes that defendants have made a substantial showing that Mercurio was a government informant and may have been in possession of information about the location of the so-called Mafia induction ceremony prior to entry of the roving order by Judge Nelson on October 27, 1989." Government's Motion for Reconsideration of the Court's May 22, 1997 Order at 7–8. ("Gov. Motion for Reconsideration"). If, as the defendants' evidence indicates, Mercurio was an informant and learned on October 25, 1989 that the induction ceremony would be held at 34 Guild Street on October 29, 1989, this court would be required to reconsider its findings in denying the motion to suppress in *United States v. Ferrara*, 771 F.Supp. 1266 (D.Mass.1991), that the violations of 18 U.S.C. § 2518 that the court found resulted from good faith errors, *id.* at 1309, and, in any event, were not material to whether a roving warrant would have been issued by a judge who had all of the legally required information, *id.* at 1310–11. *See* May 22, 1997 Memorandum and Order at 33–34. More significantly, the government's memorandum in support of its motion to reconsider does not address directly the important point that the omitted fact that a government informant was planning to attend the October 29, 1989 induction ceremony arguably could have influenced a judge to have found that no electronic surveillance, roving or fixed, was justified. *Id.* at 34.

The government does, however, suggest that, if necessary, it will stipulate to certain facts, including the facts that it had a confidential informant at the induction ceremony, but that he was unwilling to testify. Gov. Motion for Reconsideration at 10 and Attachment A. The government also proposes that the defendants stipulate to the government's version of the date on which it learned the location of the induction ceremony. *Id.* The short answer to this proposal is that at the June 3, 1997 hearing the defendants refused to accept the suggested stipulation. In the context of this case, their decision is not only dispositive of this issue, their skepticism about the reliability of the government's representations is understandable.

As this court found previously, in 1991 the government initially attempted to mislead the court and the defendants in *Ferrara* concerning the existence of the issue of whether the government had failed to provide the issuing judge all of the legally required information with regard to whether roving electronic surveillance should be authorized. *Ferrara*, 771 F.Supp. at 1308 & n. 16. Questions concerning the reliability of the government's representations in connection with this matter persist to this day. In 1991 this court relied upon the testimony of an Assistant United States Attorney in finding that she did not "fail to mention 34 Guild Street to [the issuing judge] to protect the identity of any informant." *Id.* at 1279. In the May 22, 1997 Memorandum and Order, page 30, the court noted this finding. On June 3, 1997, the government disclosed to the court and the defendants in this case an October 25, 1989 memorandum from the Boston office of the FBI to its headquarters concerning the then proposed application for

a roving warrant. That memorandum states, in part, that "[roving] authorization will also help to protect the identity of any confidential sources, who otherwise might be revealed if singular information (in this case, the location of sensitive LCN meeting) provided by the source was incorporated into the affidavit of a traditional Title III application." Attachment to June 3, 1997 letter from Assistant United States Attorney Fred M. Wyshak. As the government acknowledged at the June 3, 1997 hearing, this memorandum should have been disclosed in 1991.[2]

It also remains appropriate to require that the government confirm or deny whether Donati was an informant in October 1989 in connection with the evidentiary hearing on the motion to suppress the intercepted communications at 34 Guild Street. Indeed, the government's recent submissions actually strengthen the previously persuasive showing that defendants are entitled to know if Donati was an informant. See May 22, 1997 Memorandum and Order at 32–33. More specifically, the recently disclosed October 25, 1989 FBI memorandum cites the protection of multiple "sources" as a reason for seeking roving authority, adding to the evidence that Donati as well as Mercurio was then an informant. Attachment to June 3, 1997 letter from Assistant United States Attorney Fred M. Wyshak (emphasis added).

The government's motion to reconsider, page 7, states, however, that "as the United States has suggested in the cases of St. Laurant and Guarino, there are other sources of evidence that would enable the Court to determine whether Donati provided information to the United States that was deliberately omitted or misstated in its application for roving electronic surveillance." As discussed below, the government suggests that, if necessary, Guarino and St. Laurant should be called to testify regarding whether they were informants rather than requiring that the government confirm or deny their status. Donati, however, is dead. His testimony is not an option in this case and the government has specified no other alternative. See Gov. Motion for Reconsideration at 7. In any event, the government is the most appropriate source of the information concerning Donati to which the defendants are entitled.

### B. The December 11, 1991 FBI Electronic Surveillance at the Hilton Hotel

With regard to the December 10, 1991 order authorizing roving electronic surveillance that targeted Guarino, Salemme and Natalie Richichi that was used the next day to intercept conversations at the Hilton Hotel, the government cryptically claims that "disclosure of any informant information is not essential to the determination of the matter [of suppression]." This is simply incorrect. As described fully in the May 22, 1997 Memorandum and Order, pages 35–43, "[i]f Guarino was cooperating the defendants appear to have a strong argument that the government did not make the 'full and complete statement[s]' required by 18 U.S.C. § 2518(1)(c) and (11)(a)(ii), and this omission was material not only to the necessity for a roving warrant, but to the reasonableness of authorizing any electronic surveillance at all," id. at 41 (citing United States v. Mastroianni, 749 F.2d 900, 909 n. 6 (1st Cir.1984); United States v. Simpson, 813 F.2d 1462, 1472 (9th Cir.), cert. denied, 484 U.S. 898, 108 S.Ct. 233, 98 L.Ed.2d 192 (1987)).

---

**2.** Ordinarily an order authorizing electronic surveillance may only be issued if there is probable cause to believe that criminal communications will occur at a particular place and the authorization is limited to that place. See 18 U.S.C. §§ 2518(3)(d) and (4)(b). A roving warrant provides a limited exception to these requirements. See 18 U.S.C. § 2518(11)(a). A roving warrant does not require specification of the place or places where it is to be employed, but may be issued only if the government makes a full and complete statement as to why such specification is impractical and the issuing judge agrees. Id. In Ferrara, this court found that it was practica-

ble to have specified 34 Guild Street as a place there was probable cause to believe the requested warrant would be used and that the government failed to make the required full disclosure to the court. 771 F.Supp. at 1306. The court did not, however, suppress the evidence of the intercepted Mafia induction ceremony in part because it found that the failure to make the required full disclosure was an innocent error rather than part of a deliberate effort to protect the identity of any informant. Id. at 1279, 1306–07. The recently disclosed FBI memorandum is inconsistent with this conclusion concerning the government's motive.

The government, however, proposes that the court require testimony from Guarino and others before it is ordered to confirm or deny whether Guarino was an informant. Gov. Motion for Reconsideration at 6. This suggestion is unpersuasive for several reasons.

Ordering Guarino to disclose whether he was an informant would be inconsistent with the assurance of confidentiality informants often seek and, therefore, would have essentially the same effect on the willingness of sources of information to cooperate with the government in the future as requiring the government to make the disclosure. There is no public interest to be served by this approach.

On the contrary, the government's proposal is likely merely to complicate and prolong these already complex and protracted proceedings, which the public and the detained defendants have an interest in seeing resolved as soon as possible. For example, it is foreseeable that if called as witnesses prior to disclosure of their status by the government Guarino and/or St. Laurant may refuse to testify and have to be incarcerated for civil contempt until they change their minds. If they testify and deny that they were informants, the defendants will inevitably request from the government any impeaching information, which will have the practical effect of requiring the government to confirm or deny their status in any event.

Most significantly, the law requires the government, in seeking judicial authorization for electronic surveillance, to make "a full and complete statement" as to why conventional investigative techniques, including obtaining information from informants and the potential for obtaining consensual tape recordings, are unavailable or unlikely to succeed. See 18 U.S.C. § 2518(1)(c); May 22, 1997 Memorandum and Order at 9–11; Ferrara, 771 F.Supp. at 1285, 1307. It is important that the government properly satisfy this requirement because the constitutionality of the electronic surveillance statute ("Title III") relies in meaningful measure on the process it provides for an independent judicial officer, rather than a law enforcement officer engaged in the competitive business of fighting crime, to decide that electronic surveillance is necessary, and therefore reasonable, in a particular case. See Steagald v. United States, 451 U.S. 204, 212, 101 S.Ct. 1642, 1647–48, 68 L.Ed.2d 38 (1981); Johnson v. United States, 333 U.S. 10, 14, 68 S.Ct. 367, 369, 92 L.Ed. 436 (1948); Ferrara, 771 F.Supp. at 1205, 1307; May 22, 1997 Memorandum and Order at 10–11. Therefore, where, as here, defendants have made a substantial preliminary showing that the government may have deliberately violated the law by failing to disclose what may be material information to an issuing judge, it is most appropriate that the government itself provide the defendants and the court the accurate information necessary to decide the question of suppression.

With regard to St. Laurant, the government does not contend that there is not ample evidence to suggest that he was an informant in December 1991. See May 22, 1997 Memorandum and Order at 38–39. That evidence includes Flemmi's affidavit regarding the statements made to him by the FBI that indicate that St. Laurant was an informant. April 27, 1997 Affidavit of Stephen J. Flemmi ¶ 5. Rather, the government again attacks the relevancy of St. Laurant's possible status as an informant to the pending motion. Gov. Motion to Reconsider at 56. In response, the defendants have filed a supplementary affidavit which confirms the propriety of the court's decision to order disclosure of St. Laurant's status. See June 3, 1997 Certification of Anthony Cardinale, Esq. Relating to Anthony St. Laurant ("June 3, 1997 Cardinale Cert.").

More specifically, the defendants have made a substantial preliminary showing of the following additional facts concerning St. Laurant. As the government acknowledged at the June 3, 1997 hearing, St. Laurant is commonly referred to as "the Saint" and is understood by the government to be a "made-member" of the Patriarca Family of La Cosa Nostra ("LCN"). St. Laurant works in Rhode Island and has been closely associated with Guarino, who referred to their relationship a number of times in his conversation with Richichi that was inter-

cepted at the Hilton Hotel. June 3, 1997 Cardinale Cert. ¶ 4 and Exhibit 1 at 18–20.

If true, the facts that St. Laurant was an informant, but was not referenced in the affidavit in support of the application for the December 10, 1991 roving authorization, are arguably material to whether any electronic surveillance, roving or fixed, was necessary. More specifically, the application and affidavit represented that the requested electronic surveillance was required to obtain evidence of Salemme's role in the LCN and in the suspected Rhode Island based money-laundering scheme. *See* December 10, 1991 Application for an Order Authorizing Interception of Oral Communications, ¶ 4(e)(1), Bate Stamp ("BS") 7209, ¶ 4(c), BS 7207, ¶ 5(c), BS 7208; December 10, 1991 Affidavit of Special Agent Walter J. Steffens, Jr., ¶ 4, BS 7222–23, ¶ 67, BS 7266. If, however, St. Laurant was an informant not referenced in the affidavit in support of the application, it may be argued that this was a material omission because a reasonable judge could have made further inquiries and decided that electronic surveillance was not necessary to establish Salemme's role in the LCN, or in crimes being committed in Rhode Island, if the judge had been informed that the FBI had a Rhode Island-based member of the Patriarca Family as an informant.

The recently received supplementary information provides a substantial basis for defendants' claim that there was a close criminal association between St. Laurant and Guarino. *See* June 3, 1997 Cardinale Cert. ¶ 4. Such an association is relevant to determining the veracity of the statements in the September 16, 1996 affidavit of FBI Special Agent Brian K. Rossi that he did not, in his inadvertently taperecorded comment, refer to "Saint" or seriously suggest making up a list of questions for Guarino to ask Richichi. *See* September 16, 1996 Affidavit of Brian K. Rossi ¶ 2; May 22, 1997 Memorandum and Order at 37–40. If Guarino was indeed an informant and it is established that Rossi knew in December 1991 that St. Laurant was an informant, the credibility of the government's affidavits asserting that he and Steffens, the affiant for the December 1991 application, did not then know Guarino's status would be

called into serious question. If Guarino was an informant, his status in the December 1991 application was mischaracterized and there is a strong argument that this mischaracterization was material. A finding of a material misstatement in the December 10, 1991 application would require a determination of whether that misstatement was deliberate, reckless, or inadvertent in order to decide the motion to suppress. *See Franks v. Delaware*, 438 U.S. 154, 156, 98 S.Ct. 2674, 2676–77, 57 L.Ed.2d 667 (1978); *Ferrara*, 771 F.Supp. at 1305 (citing cases); May 22, 1997 Memorandum and Order at 11–13. Disclosure of St. Laurant's status is relevant to this related series of inquiries.

### C. *The Revised Order*

■ Accordingly, for the reasons stated in the May 22, 1997 Memorandum and Order, as amplified by this Memorandum, the Acting Deputy Attorney General is being ordered to disclose whether Mercurio, Donati, Guarino and/or St. Laurant were informants. This Order presents the Acting Deputy Attorney General with a choice. More specifically, "[w]here [as here] a trial court overrules a law enforcement official's assertion of privilege not to disclose the identity of an informant, the prosecution is then confronted with a choice either to disclose or to suffer an adverse consequence to its case." *United States v. Russotti*, 746 F.2d 945, 949 (2d Cir.1984). In this case, that adverse consequence may be the exclusion at trial of the evidence to which each alleged informant's identity relates and any evidence derived from it. *Id.*; 18 U.S.C. § 2515 (providing that a violation of Title III results in exclusion at trial of the intercepted communication and any "evidence derived therefrom"). It is also foreseeable that if the government does not make the disclosures again being ordered the defendants will contend that this is an extreme case of government misconduct and cover-up that should result in dismissal. *See Roviaro*, 353 U.S. at 60–61, 77 S.Ct. at 627–28 (holding that where the court determines that the informant privilege is trumped by the needs of a defendant and the interest of a fair trial "the trial court may require disclosure [of the informant's identity] and, if the government withholds the information, dis-

miss the action"). Indeed, Mr. Coffey has informed the court that at times the government has chosen to dismiss a case rather than comply with an order to identify an informant. *See* April 16, 1997 Tr. at 30–52. Accordingly, if the Acting Deputy Attorney General decides not to comply with the order to disclose whether Mercurio, Donati, Guarino, and/or St. Laurant were informants, he shall advise the court whether the government wishes to stipulate to the exclusion of the relevant intercepted communications and any evidence derived from them, or move to dismiss this case.

■ In addition, if the Acting Deputy Attorney General does not comply with the order to disclose the status of the individuals at issue, it will be necessary for him, rather than a subordinate, to respond to the defendants' motion that he be held in civil contempt. Pursuant to the authority vested in him by 28 C.F.R. § 16.25, the Acting Deputy Attorney General has thus far directed the prosecutors involved in this case not to obey the May 22, 1997 Order requiring them to confirm or deny whether Mercurio, Donati, Guarino and/or St. Laurant were informants. The regulation vesting in the Deputy Attorney General the power to decide whether to comply with that Order is a valid exercise of the discretion conferred by Congress in 5 U.S.C. § 301 and protects the prosecutors here from being held in civil contempt.[3] *In re Recalcitrant Witness Richard Boeh,* 25 F.3d 761, 763 (9th Cir.1994), *cert. denied sub nom. Olivas v. Boeh,* 513 U.S. 1109, 115 S.Ct. 898, 130 L.Ed.2d 783 (1995); *see also United States ex rel. Touhy v. Ragen,* 340 U.S. 462, 71 S.Ct. 416, 95 L.Ed. 417 (1951) (upholding constitutionality of Department of Justice regulation based on precursor to § 301). It does not, however, immunize the ultimate decisionmaker, the Acting Deputy Attorney General, from being held in civil contempt if the court decides that it is appropriate to compel disclosure of the information at issue. *Touhy,* 340 U.S. at 472, 71 S.Ct. at 421 (Frankfurter, J., concurring) ("[T]he At-

torney General [cannot] forbid every subordinate who is capable of being served by process from producing relevant documents and later contest a requirement upon him to produce on the ground that procedurally he cannot be reached ... [T]he Attorney General can be reached."); *Exxon Shipping Co. v. United States Dept. of Interior,* 34 F.3d 774, 778 (9th Cir.1994) (rejecting "government's argument that § 301 authorizes agency heads to withhold documents or testimony from federal courts"); *In re Recalcitrant Witness,* 25 F.3d at 772 (Norris, J., dissenting) (characterizing Attorney General's contention that § 301 empowers her to resist completely court's subpoena of FBI agent as "rais[ing] serious separation of powers questions"); *Nixon v. Sirica,* 487 F.2d 700, 708–09 (D.C.Cir.1973) (noting that "courts have assumed that they have the power to enter mandatory orders to Executive officials to compel production of evidence" and that such assumption "surely stands on firm footing").

■ Although it is not now necessary or appropriate to decide this issue, at present it appears to the court that, contrary to Mr. Coffey's representation on April 16, 1997, Tr. at 38, an order holding the Acting Deputy Attorney General in civil contempt would not be immediately appealable. It is axiomatic that "a party to a pending suit may not appeal a civil contempt as such." 15B Charles Alan Wright, Arthur R. Miller and Edward H. Cooper, *Federal Practice and Procedure* § 3917, at 380 (2d ed.1992); *Appeal of Licht & Semonoff,* 796 F.2d 564, 568 (1st Cir.1986) ("A party ... may appeal only an order of criminal contempt before final judgment, not one of civil contempt."); *Powers v. Chicago Transit Auth.,* 846 F.2d 1139, 1141 (7th Cir.1988) (same). As Justice Anthony Kennedy held while serving on the Court of Appeals for the Ninth Circuit, the substantial congruence of interest between an Attorney General and the party that he or she not only represents but makes final decisions for in litigation precludes an Attorney

---

**3.** 5 U.S.C. § 301 provides in pertinent part:
 The head of an Executive department ... may prescribe regulations for the government of his department, the conduct of its employees, the distribution and performance of its business

and the custody, use, and preservation of its records, papers, and property. This section does not authorize withholding information from the public or limiting the availability of records to the public.

General from taking an interlocutory appeal of an order holding him or her in civil contempt. *In re Coordinated Pretrial Proceedings in Petroleum Products Antitrust Litigation,* 747 F.2d 1303, 1305–06 (9th Cir.1984). This conclusion would be equally applicable in this case to the Acting Deputy Attorney General to whom the Attorney General has, by regulation, delegated final decisionmaking authority regarding compliance with this court's Orders to disclose informants. Accordingly, if the government does not disclose the information concerning informants required by the Order now being issued, the Acting Deputy Attorney General's response to the defendants' motion that he be held in civil contempt shall, in the interests of efficiency, also address whether any order of civil contempt is immediately appealable.

### III. *The Motion to Unseal the May 22, 1997 Memorandum and Order*

■ As indicated earlier, the court is allowing the motion of Salemme, DeLuca, and James Martorano to unseal the May 22, 1997 Memorandum and Order, and will also make this Memorandum and Order part of the public record. A decision regarding the unsealing of the related submissions and transcripts is being reserved pending a review of them.

■ A judicial decision "is a formal act of government, the basis of which should, absent exceptional circumstances, be subject to public scrutiny." *Joy v. North,* 692 F.2d 880, 893 (2d Cir.1982), *cert. denied sub nom. Citytrust v. Joy,* 460 U.S. 1051, 103 S.Ct. 1498, 75 L.Ed.2d 930 (1983); *see also United States v. Amodeo,* 71 F.3d 1044, 1049 (2d Cir.1995). There is a presumption of public access to judicial decisions in part because public monitoring of the courts is an essential feature of democratic control and judicial accountability. *Amodeo,* 71 F.3d at 1049; *Federal Trade Commission v. Standard Financial Management,* 830 F.2d 404, 410 (1st Cir.1987). The propriety of making judicial decisions "accessible is accentuated where [as

here] the government is a party: in such circumstances, the public's right to know what the executive branch is about coalesces with the concomitant right of the citizenry to appraise the judicial branch." *Standard Financial Management,* 830 F.2d at 410. There is not, however, an absolute public right to access to judicial decisions, among other things. *Nixon v. Warner Communications, Inc.,* 435 U.S. 589, 598, 98 S.Ct. 1306, 1312, 55 L.Ed.2d 570 (1978). Rather, the presumption of public access must be balanced against competing considerations, including the danger of impairing law enforcement or judicial efficiency, and the privacy interests of those resisting disclosure. *Amodeo,* 71 F.3d at 1050.

Consideration of the relevant factors in the present matter persuades the court that the May 22, 1997 Memorandum and Order and this decision should now be matters of public record.

In this case, the defendants and the government requested that the submissions and proceedings leading to the May 22, 1997 Memorandum and Order not be made public. The court agreed with the parties that confidentiality was appropriate because alleged informants would be discussed and it was in the interests of the administration of justice to maximize the candor of counsel and to minimize publicity regarding any individual who might be endangered or embarrassed if reported to be a suspected informant and the court did not ultimately order the government to confirm or deny that suspicion. Consistent with this, the court temporarily sealed the May 22, 1997 Memorandum and Order, intending to maintain its confidentiality at least until it received the government's response .[4]

Published reports, however, indicate that both law enforcement and defense sources promptly provided confidential information to the media. For example, on May 24, 1997 the *Boston Herald* published an article headlined "Judge Demands Files on Whitey, FBI Link." That article cited "sources familiar

---

**4.** The court did, however, authorize the government to advise Bulger, Mercurio, Guarino, and St. Laurant of the contents of the Order as it pertained to him if the government deemed it to

be in the interests of the safety of that individual to do so. *See* May 22, 1997 Memorandum and Order at 49.

with the sealed order" and stated in part: "*Law enforcement* sources said Bulger is one of two unnamed informants cited in the application for the 1981 wiretap of Boston Mob underboss Gennaro "Jerry" Angiulo's Prince Street headquarters." Ralph Ranalli, *Judge Demands Files on Whitey, FBI Link,* Boston Herald, May 24, 1996, at 6 (emphasis added). Without confirming or denying the accuracy of this statement, the court notes that this issue was addressed by the government in a submission made *ex parte* for the court's *in camera* consideration. On May 25, 1997, the *Boston Globe* published an article headlined "Judge Demands FBI Files on Whitey Bulger, Flemmi Cooperation" which is replete with references to defense sources and discloses that the court ordered the government to reveal whether Mercurio was an informant, among other sealed matters. A May 29, 1997 *Boston Globe* article headlined "Focus Turns to Fugitive Bulger's FBI Ties" cites multiple sources and, among other things, refers to an affidavit that Flemmi filed under seal that is referenced in the May 22, 1997 Memorandum and Order at 31–32.

In response to the May 22, 1997 Order, the government has now confirmed that Bulger was an FBI informant during much of the period relevant to this case. The government agrees that the portion of the May 22, 1997 Memorandum and Order relating to Bulger and Flemmi should now be made public. Flemmi opposes this. His co-defendants, however, urge that the complete decision be unsealed. The court finds that complete unsealing of the May 22, 1997 Memorandum and Order and the public filing of this Memorandum and Order is the most appropriate resolution of this issue.

There will now be hearings to resolve the implications for this case of the facts that Bulger and Flemmi were FBI informants during much of the period that the Fourth Superseding Indictment alleges they were committing serious crimes. Those hearings must be conducted publicly so that citizens can monitor and assess the past performance of officials of the executive branch and the present performance of executive and judicial officials. Access to the May 22, 1997 Memorandum and Order, and to this decision, are important to public understanding of the forthcoming public proceedings.

The court has considered whether only the portions of its decisions regarding Bulger and Flemmi should now be made public and concludes that this is not most appropriate. The May 22, 1997 Memorandum and Order is an organic document. For example, the analysis regarding Bulger relied in part on the court's findings concerning Mercurio. *See* May 22, 1997 Memorandum and Order at 16. In addition, selective leaks from defense and law enforcement sources have placed in the public domain information suggesting that Bulger, Flemmi, and Mercurio were informants. Public disclosure of the court's decisions concerning them should not enhance any risk to them or to the public interest in the free flow of information to law enforcement from confidential sources. Only the essence of the court's findings concerning Guarino, Donati, and St. Laurant have not, to the court's knowledge, already been made public.

At this point, the privacy interests of Flemmi, Guarino, Donati, and St. Laurant, and the government's interest in obtaining information from confidential sources in the future are outweighed by the public interest in access to the court's full decisions. As described earlier, the government retains the power to decline to obey the order to disclose the status of the remaining alleged informants and to suffer the consequences in this case. Thus, unsealing the May 22, 1997 Memorandum and Order, and making this decision public, should not harm the public interest in encouraging cooperation with law enforcement to the degree that disclosing the actual identity of an informant arguably might. With regard to the individual privacy interests at stake, Flemmi's status as an informant has already been, improperly, publicly disclosed; Donati is dead; Guarino and St. Laurant may suffer some embarrassment, but the government has had several weeks to address any possible concerns regarding their safety.

In any event, these considerations are outweighed by the factors favoring public disclosure of the full May 22, 1997 Memorandum and Order and this decision. The court has

found that the defendants have made a substantial preliminary showing of possible serious government misconduct in seeking court orders for electronic surveillance. The government has been ordered to make the disclosures necessary for the court to decide if such misconduct occurred. If it declines to comply there will be adverse consequences for this case; indeed, defendants will undoubtedly argue that it should be dismissed. In addition, if the government declines to comply it will impede, and possibly frustrate, resolution of the merits of claims of government misconduct as to which defendants have made a substantial preliminary showing. In the circumstances, it may be necessary to hold a hearing to determine whether the Acting Deputy Attorney General should be held in civil contempt and incarcerated until he complies with the court's Orders.

Experience suggests that it is doubtful that the confidentiality of the court's decisions and future proceedings could, as a practical matter, be maintained. *See Associated Press v. United States District Court for the Cent. Dist. of California,* 705 F.2d 1143, 1146 (9th Cir.1983) (holding that to properly close a proceeding "there must be 'a substantial probability that closure will be effective in protecting against the perceived harm' ") (quoting *United States v. Brooklier,* 685 F.2d 1162, 1167 (9th Cir.1982)). More significantly, however, the public's legitimate interest in understanding and monitoring the progress of these matters outweighs the now diminished countervailing considerations. Thus, the May 22, 1997 Memorandum and Order will be unsealed and this decision will be made part of the public record.

IV. *Order*

For the reasons stated in the May 22, 1997 Memorandum and Order and in this Memorandum, it is hereby ORDERED that:

1. The Government's Motion for Reconsideration of the Court's May 22, 1997 Order is DENIED, except to the extent that Order is modified in paragraph 2 hereinbelow.

2. By 12:00 noon on June 12, 1997, the Acting Deputy Attorney General Seth P. Waxman shall:

a. File a statement informing the court and the defendants whether Angelo "Sonny" Mercurio, Robert Donati, Kenneth Guarino, and/or Anthony St. Laurant has, at any time in the period from 1967 to the present, served as a confidential source of information (however internally designated) for any agency, agent, or attorney within the Untied States Department of Justice, including but not limited to the Federal Bureau of Investigation.

b. If the Acting Deputy Attorney General does not comply with the requirements of paragraph 2(a) hereinabove, he shall file a statement informing the court and the defendants whether he, on behalf of the Department of Justice, (i) agrees to the exclusion at trial of the intercepted communications relating to the alleged informants now at issue and any evidence derived from them, or (ii) moves that this case be dismissed.

c. If the Acting Deputy Attorney General does not comply with the requirements of paragraph 2(a) hereinabove, he shall also file an affidavit and memorandum seeking to show cause why the court should not allow defendants' motion that he be held in civil contempt of the May 22, 1997 Memorandum and Order and, in those submissions, address the question whether a finding of civil contempt against him would be immediately appealable.

3. Defendants Salemme, DeLuca, and James Martorano's Motion to Unseal the May 22, 1997 Memorandum and Order is ALLOWED. The May 22, 1997 Memorandum and Order, as amended on May 27, 1997, will be made part of the public record in a form which includes most of the previously redacted version of page 17, n. 3 because the government has now disclosed to defendants the substance of that portion of the previously redacted information—the fact that Bulger was an informant.

4. Counsel for the parties shall confer and by 12:00 noon on June 12, 1997 inform the court, jointly if possible but separately if necessary, of what discovery, if any, they believe is necessary or appropriate to resolve the pending issues relating to the status of Bulger and Flemmi as informants and propose a procedure for resolving those issues.

They shall also confer and report regarding the possible unsealing of the submissions and transcripts relating to the May 22, 1997 Order and this decision.

5. A hearing on all pending matters will be held on June 17, 1997 at 9:30 a.m.

6. Except as revised by paragraph 2 hereinabove, the May 22, 1997 Order remains in effect. This includes, but is not limited to, the requirement that the government inform the court immediately *in camera* if issues similar to those addressed in the May 22, 1997 Memorandum and Order and this decision exist with regard to additional applications for electronic surveillance relating to this case. As stated at the June 3, 1997 hearing, if the government is uncertain whether a particular matter must be disclosed to the court, it should submit the matter for the court's *in camera* consideration.