**Steve DEBRY and Enrique Velez, Plaintiffs,**

v.

**DEPARTMENT OF HOMELAND SECURITY and Janet Napolitano, in her Official Capacity as Secretary of the Department of Homeland Security, Defendants.**

Case No. 09cv1682–WQH–CAB.

United States District Court, S.D. California.

Nov. 24, 2009.

Lauren Mayo–Abrams, Law Offices of Lauren Abrams, Beverly Hills, CA, for Plaintiffs.

Ernest Cordero, Jr., U.S. Attorneys Office Southern District of California, San Diego, CA, for Defendants.

## ORDER

HAYES, District Judge:

The matter before the Court is the Motion to Dismiss Or, in the Alternative, for Summary Judgment ("Motion"), filed by Defendants Department of Homeland Security and Janet Napolitano (collectively, "DHS"). (Doc. # 3).

## I. Background

On August 4, 2009, Plaintiffs initiated this action by filing the Complaint in this Court. (Doc. # 1). Pursuant to the Administrative Procedures Act ("APA"), Plaintiffs seek review of a final decision by the DHS denying Plaintiffs' request to depose a DHS employee in a separate state court action.

### A. Allegations of the Complaint

Plaintiffs are former correctional officers who were employed at the San Diego Correctional Facility (the "Facility") by the Corrections Corporation of America ("CCA"). CCA is a private company which operates pursuant to contracts with, among others, the Immigration and Customs Enforcement, which is a component of the DHS. On December 7, 2006, while Plaintiffs were on duty, a violent assault on an inmate occurred in the "D–Unit" of the Facility "as a result of [CCA's] pattern and practice of inadequately staffing its prison units." (Doc. # 1 ¶ 8). Plaintiffs were immediately placed on administrative leave. The DHS's Office of the Inspector General commenced "a civil rights investigation" into the assault. (Doc. # 1 ¶ 10). As part of the investigation, each Plaintiff was interviewed by DHS Agent Sterling Scott. "During the course of the interviews, Plaintiffs DeBry and Velez each informed Agent Scott that CCA had a pattern and practice of overcrowding and inadequately staffing its San Diego Correctional Facility; that CCA had inadequately staffed the D–Unit on the night of the violent incident; and that CCA had refused [Plaintiffs'] request to assign additional officers on the night of the 2006 Incident." (Doc. # 1 ¶ 18). "Agent Scott told Plaintiffs after the interviews that they were cleared of any wrongdoing in the 2006 Incident and that he would instruct CCA that they should be returned to work." (Doc. # 1 ¶ 10). On March 6, 2007, shortly after Agent Scott interviewed Plaintiffs, CCA stopped paying Plaintiffs for their administrative leave. On June 27, 2007, "CCA terminated Plaintiffs based on false allegations of vague, *de minimus* procedural errors." (Doc. # 1 ¶ 12).

On March 7, 2008, Plaintiffs filed a civil action in San Diego Superior Court "against CCA and certain individual officers of CCA alleging that CCA terminated them because they made protected complaints about unsafe and illegal working conditions and reported these unsafe and illegal working conditions to the DHS" (hereinafter, the "Underlying Litigation"). (Doc. # 1 ¶ 15).

> Agent Sterling Scott, as a result of his participation in the DHS investigation of the 2006 Incident, has first-hand knowledge of each of the following factual topics which are of paramount importance to Plaintiffs' claims [in the Underlying Litigation]: (1) whether Plaintiffs informed the DHS during the course of its investigation of unsafe and possibly illegal conditions at the Facility; (2) whether the DHS informed CCA that Plaintiffs had told the DHS about unsafe and possibly illegal conditions at the Facility; (3) whether, following its investigation, the DHS informed Plaintiffs that they were cleared of any wrongdoing and recommended to be returned to work; and (4) whether, following its investigation, the DHS informed CCA that Plaintiffs were cleared of any wrongdoing and recommended to be returned to work.

(Doc. # 1 ¶ 21). "In its Motion for Summary Judgment [in the Underlying Litigation] ..., CCA alleges it terminated Plaintiffs because CCA concluded, in good faith following a review of the evidence gathered in connection with the 2006 Incident, that Plaintiffs violated CCA policies during the 2006 Incident." (Doc. # 1 ¶ 24). Plaintiffs allege that Agent Scott's testimony is relevant to the issues of whether CCA's stated reason for Plaintiffs' termination is pretextual, whether Plaintiffs engaged in protected activity by complaining to Agent Scott about the "possibly illegal conditions at the Facility," and whether Agent Scott communicated those complaints to CCA. (Doc. # 1 ¶ 30).

On March 26, 2009, Plaintiffs sent a letter to the DHS Office of the General Counsel, seeking permission to depose Agent Scott, and seeking any notes taken by Agent Scott of his interviews with Plaintiffs and of communications with CCA concerning Plaintiffs. (Doc. # 1, Ex. 1). On June 1, 2009, Michael Russell, Acting Associate General Counsel for the DHS, sent Plaintiffs a letter, which stated:

> Pursuant to 6 C.F.R. § 5.48, I have determined that it would not be in the best interests of the Department to provide Agent Scott for testimony as requested. Among other reasons, such testimony would take undue time of Department employees away from the conduct of official business, expend the resources of the Department for private litigation and have an adverse effect on the performance by the Department of its mission and duties.

(Doc. # 1, Ex. 2).

In the Complaint's sole cause of action, Plaintiffs allege that, pursuant to the APA, the DHS's refusal to permit Plaintiffs to depose Agent Scott in the Underlying Litigation "should be set aside, because it is arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law, and because it is an action that deprives Plaintiffs of evidence that is of central importance to their claims in the Underlying Litigation." (Doc. # 1 ¶ 55).

**B. DHS Motion**

On October 13, 2009, the DHS filed the Motion, seeking an order from the Court affirming the decision to deny Plaintiffs' request to take Agent Scott's deposition. (Doc. # 3). The DHS contends that its decision was "entirely reasonable" because:

> [P]roducing [Agent] Scott for deposition would involve a wasteful diversion of a public officer from his official duties. It also would potentially hinder the ability of the DHS to perform future investigations. To the extent Plaintiffs seek to establish the content of conversations between [Agent] Scott with other individuals, including themselves, they can do so through their own testimony or the testimony of third parties. [Agent] Scott's testimony regarding those conversations would be duplicative and unnecessary. Furthermore, his testimony would not reveal much relevant information.

(Doc. # 3–1 at 1).

The DHS submitted declarations from two DHS employees who participated in the decision to deny Plaintiffs' request to depose Agent Scott. Keri Buck, Assistant Counsel to the Inspector General, stated that she recommended that DHS deny Plaintiffs' request because:

> (a) Agent Scott is based in the San Diego field office, which has a heavy workload and is understaffed, and "there is a need to conserve [Agent] Scott's time for official business."
>
> (b) "Allowing the deposition of [Agent] Scott in a lawsuit involving a private dispute between CCA and two employees ... would potentially hinder the

ability of the DHS to perform future investigations at the Facility. This is so, because CCA officials and employees might be less willing to speak freely to DHS investigators in the future due to fear such communications might be disclosed during litigation."

(c) With respect to the complaints Plaintiffs allegedly made to Agent Scott, "Plaintiffs themselves can testify about conversations they had with [Agent] Scott. Accordingly, the DHS concluded that there is no need for [Agent] Scott to testify regarding the same conversations."

(d) With respect to Plaintiffs' belief that Agent Scott informed CCA officials that Plaintiffs complained about safety violations at the Facility, after "discussing the matter with [Agent] Scott in detail and closely reviewing the applicable documents," Buck "found that [Agent] Scott had very limited relevant information.... [T]he DHS concluded that [Agent] Scott's testimony would not provide the evidence sought by Plaintiffs. Furthermore, Plaintiffs can take the depositions of CCA officials to determine what, if anything, [Agent] Scott told them about his conversations with Plaintiffs."

(e) With respect to Plaintiffs' contention that Agent Scott informed Plaintiffs and CCA officials that Plaintiffs were cleared of any wrongdoing and should be returned to work, "[Agent] Scott is employed by the DHS, not CCA. He has no authority to decide Plaintiffs' employment status with CCA, as he is not in CCA's chain of command. Under the circumstances, [Agent] Scott's testimony would not provide Plaintiffs the evidence they seek.... Additionally, the DHS concluded that Plaintiffs can testify as to any conversations they had with [Agent] Scott.... Plaintiffs can take the depositions of CCA officials to determine what,

if anything, [Agent] Scott told them...."

(Buck Decl. ¶¶ 5–8, Doc. # 3–3).

Michael Russell, then-Acting Associate General Counsel for DHS, stated that he denied Plaintiffs' request after discussion with Buck and review of her recommendation. Among his stated reasons were:

(a) "Although Plaintiffs' attorney ... indicated that the time with [Agent] Scott would be approximately 2 hours, that would only be from her perspective, and not necessarily from the perspective of the Defendants in the litigation about which [Agent] Scott's testimony was sought.... [I]f the DHS made [Agent] Scott available to the DHS would also believe it necessary to grant equal access to the Defendants. Moreover, providing [Agent] Scott could result in a request by one of the parties for an appearance at trial. Obviously, that also would take time away from Agent Scott's official duties."

(b) "I also decided that providing [Agent] Scott would necessarily expend the DHS's resources for private litigation, as [Agent] Scott's duty time, paid for by the United States, would be encumbered. The DHS regulations ... indicate a preference to avoid such expenditures...."

(c) "It was ... not inconceivable given the background of [Agent] Scott's involvement, and the allegations of adverse personnel consequences which were presented to us, that one of the parties would attempt to bring the United States into the litigation. The requirement to defend litigation typically involves substantial investment of time and resources of not only the DHS's legal counsel, but also the employees involved."

(Russell Decl. ¶¶ 5–6, 8, Doc. # 3–2).

On November 2, 2009, Plaintiffs filed an opposition to the DHS Motion. (Doc. # 6).

Plaintiffs contend that the DHS's refusal to permit the deposition of Agent Scott, which "would require negligible time and resources of the DHS," is a decision which is arbitrary, capricious, and an abuse of discretion. (Doc. # 6 at 1). "Weighed against the importance of the factual, non-privileged evidence sought by Plaintiffs, the minimal burden that the DHS may bear in connection with the proposed deposition is not a sufficient reason to deny it going forward." *Id.* Plaintiffs contend that if Agent Scott relayed to CCA officials Plaintiffs' complaints about the Facility or Agent Scott's recommendation that Plaintiffs should be cleared of wrongdoing, Plaintiffs have no way of proving this fact absent Agent Scott's testimony. In the Underlying Litigation, "CCA claims that it did not receive any information from [the DHS] regarding its investigation prior to terminating Plaintiffs." (Doc. # 1 at 13). Plaintiffs also contend that "[p]ermitting this deposition to go forward is further favored by the strong public interest in support of employees reporting unsafe working conditions and prison conditions and against employers' retaliation against those who do speak up." (Doc. # 6 at 14).

In support of Plaintiffs' opposition, Plaintiff DeBry submitted a declaration which states that during his February 26, 2007 interview with Agent Scott:

> Agent Scott told me that I wasn't a suspect or a person of interest in the investigation.... I talked to Agent Scott about unsafe conditions at the CCA San Diego Correctional Facility, including overcrowding and understaffing. I also told him that CCA had inadequately staffed the D–Unit on the night of the assault, and that CCA had refused my request to assign additional officers that night.... After the interview was over, Agent Scott told me that he would inform CCA that I could return to work.

(DeBry Decl. ¶¶ 3–5, Doc. # 6–1). DeBry also stated that after CCA placed him on unpaid leave, "[o]n ... March 9, 2007, I contacted Agent Scott to ask him why CCA had placed me on unpaid leave. Agent Scott said he didn't know, and offered to contact CCA again to tell them that I was cleared to return to work." (DeBry Decl. ¶ 7, Doc. # 6–1).

Plaintiffs also attached to their opposition a declaration from Joe Easterling, then-Warden of the San Diego Correctional Facility and a defendant in the Underlying Litigation. Easterling's declaration, which was submitted in the Underlying Litigation in support of CCA's motion for summary judgment, states that Easterling decided to terminate Plaintiffs "based solely on the inmate assault that occurred on December 7, 2006." (Easterling Decl. ¶ 29, Doc. # 6–6). Easterling stated that each Plaintiff violated Facility policies, which allowed the assault to happen. Easterling stated:

> After CCA conducted its initial investigation, the December 7, 2006 assault incident was turned over to the federal Office of Inspector General ('OIG') for investigation. I have never been informed of the results from the OIG investigation. No one from the OIG has contacted me or to my knowledge, anyone else at CCA at any time to provide any information that [Plaintiffs] or any other witness reported to the OIG during the investigation or about any conclusions that were reached by the OIG about [Plaintiffs].... I have never been told by anyone that the OIG had released or cleared DeBry or Velez to return to work at CCA.

(Easterling Decl. ¶ 24, Doc. # 6–6).

On November 5, 2009, the DHS submitted a reply brief in support of its Motion. (Doc. # 8).

On November 17, 2009, the Court conducted oral argument on the DHS Motion. (Doc. # 10).

## II. Summary Judgment Standard of Review

The parties have submitted evidence in support of, and in opposition to, the DHS Motion. Accordingly, the Court will decide the Motion according to the standard of review applicable to a motion for summary judgment. *See* Fed.R.Civ.P. 12(d) ("If ... matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56.").

Summary judgment is proper when the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R.Civ.P. 56(c). An issue of fact is "genuine" only if there is sufficient evidence for a reasonable fact finder to find for the non-moving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–49, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A fact is "material" if it may affect the outcome of the case. *See id.* at 248, 106 S.Ct. 2505. "In ruling on a motion for summary judgment, the nonmoving party's evidence is to be believed, and all justifiable inferences are to be drawn in that party's favor." *Hunt v. Cromartie*, 526 U.S. 541, 552, 119 S.Ct. 1545, 143 L.Ed.2d 731 (1999) (quotation omitted).

## III. Discussion

Plaintiffs filed this action pursuant to the APA, 5 U.S.C. § 701 et seq., because of the DHS's allegedly "unwarranted refusal to permit discovery that has been requested in accordance with the agency's so-called '*Touhy* regulations' set forth in 6 C.F.R. § 5.41 et seq." (Doc. # 1 ¶ 3). This is the proper procedure for Plaintiffs

to seek judicial review of the DHS decision. *See Kwan Fai Mak v. F.B.I.*, 252 F.3d 1089, 1092–93 (9th Cir.2001); *In re Boeh*, 25 F.3d 761, 764 (9th Cir.1994); *see also Cabral v. U.S. Dep't of Justice*, 587 F.3d 13, 22–23 (1st Cir., 2009) ("To obtain information from a federal agency, a party must file a request pursuant to the agency's regulations, and may seek judicial review only under the APA.") (quotation omitted).

### A. APA Standard of Review

In an action brought pursuant to the APA, a reviewing court may "hold unlawful and set aside agency action, findings, and conclusions found to be ... arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). "It is well established that once an agency has taken final agency action under the APA, a reviewing court analyzes that decision under the 'arbitrary and capricious' standard of review." *Mt. St. Helens Mining & Recovery Ltd. P'ship v. U.S.*, 384 F.3d 721, 727 (9th Cir.2004) (citations omitted). The parties agree that the DHS's decision to deny Plaintiffs' request to depose Agent Scott in the Underlying Litigation constitutes a final agency action, subject to review under the APA's "arbitrary and capricious" standard of review.

"Under the arbitrary and capricious standard, a reviewing court must determine whether an agency's decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment." *Id.* at 728 (citation omitted). "This standard is narrow and [a reviewing court] may not substitute [its] judgment for that of the agency. Applying the arbitrary and capricious standard, this court must determine whether the agency articulated a rational connection between the facts and the choice made."

*Id.* (citations omitted). "This standard of review is highly deferential, presuming the agency action to be valid and affirming the agency action if a reasonable basis exists for its decision." *Ranchers Cattlemen Action Legal Fund v. U.S. Dep't of Agric.,* 499 F.3d 1108, 1115 (9th Cir.2007) (quotation omitted). "In its paradigmatic statement of this standard, the Supreme Court explained that an agency violates the APA if it has 'relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise.' " *Id.* (quoting *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.,* 463 U.S. 29, 43, 103 S.Ct. 2856, 77 L.Ed.2d 443 (1983)).

## B. *Touhy* Regulations

The head of a federal agency may promulgate procedural regulations governing "the conduct of its employees, the distribution and performance of its business, and the custody, use and preservation of its records, papers and property." 5 U.S.C. § 301. The authority for such regulations was upheld by the Supreme Court in *U.S. ex rel. Touhy v. Ragen,* 340 U.S. 462, 71 S.Ct. 416, 95 L.Ed. 417 (1951) (a regulation was upheld that was issued by the Attorney General restricting testimony by employees of the Justice Department). "*Touhy* is part of an unbroken line of authority which directly supports [the] contention that a federal employee may not be compelled to obey a subpoena contrary to his federal employer's instructions under valid agency regulations." *Boron Oil Co. v. Downie,* 873 F.2d 67, 69 (4th Cir.1989); *see also Swett v. Schenk,* 792 F.2d 1447, 1451–52 (9th Cir.1986) (holding that a *Touhy* regulation "has the force of law").[1]

The DHS has promulgated *Touhy* regulations governing its employees' testimony. *See* 6 C.F.R. § 5.41 et seq. These regulations provide:

> No employee ... of the Department shall, in response to a demand or request, including in connection with any litigation, provide oral or written testimony by deposition, declaration, affidavit, or otherwise concerning any information acquired while such person is or was an employee of the Department as part of the performance of that person's official duties ..., unless authorized to do so by the Office of the General Counsel....

6 C.F.R. § 5.44(a). The applicable regulations provide that the DHS, in deciding whether to comply with a request for testimony, shall consider, "among any other pertinent considerations," the following:

> (1) Whether such compliance would be unduly burdensome or otherwise inappropriate under the applicable rules of discovery or the rules of procedure gov-

---

1. Although Plaintiffs concede that the APA's arbitrary and capricious standard of review applies, Plaintiffs quote from *Exxon Shipping Co. v. United States Department of Interior,* 34 F.3d 774 (9th Cir.1994). *Exxon Shipping* held that non-party federal agencies must produce evidence in response to subpoenas of private litigants, subject only to a federal court's discretionary right to limit burdensome discovery under Rules 26 and 45 of the Federal Rules of Civil Procedure. *"Exxon Shipping* concerned federal subpoenas in a federal action." *Reeves v. Barnhart,* 125 Fed.Appx. 120, 122 (9th Cir.2005). *"Exxon Shipping* does not control" when the "case involves a testimony request for a state ... proceeding." *Id.; see also City of Ashland v. Schaefer,* Civ. No. 08–3048, 2008 WL 2944681, at *3–*4 (D.Or., July 31, 2008) (same). Accordingly, *Exxon Shipping* does not control in this action.

erning the case or matter in which the demand arose;

(2) Whether compliance is appropriate under the relevant substantive law concerning privilege or disclosure of information;

(3) The public interest;

(4) The need to conserve the time of Department employees for the conduct of official business;

(5) The need to avoid spending the time and money of the United States for private purposes;

(6) The need to maintain impartiality between private litigants in cases where a substantial government interest is not implicated;

(7) Whether compliance would have an adverse effect on performance by the Department of its mission and duties; and

(8) The need to avoid involving the Department in controversial issues not related to its mission.

6 C.F.R. § 5.48(a).

■ Review of an agency decision pursuant to the APA is "narrow." *Mt. St. Helens Mining & Recovery Ltd. P'ship,* 384 F.3d at 728. The "APA does not empower the district court to conduct a de novo review of the administrative decision and order the agency to reach a particular result." *Id.* (citations omitted). "When an agency is not a party to an action, its choice of whether or not to comply with a third-party subpoena is essentially a policy decision about the best use of the agency's resources.... '[F]ederal judges—who have no constituency—have a duty to respect legitimate policy choices made by those who do ... [because] [o]ur Constitution vests such responsibilities in the political branches.'" *COMSAT Corp. v. Nat'l Sci. Found.,* 190 F.3d 269, 278 (4th Cir. 1999) (quoting *Chevron U.S.A. Inc. v. Natural Res. Def. Council, Inc.,* 467 U.S. 837, 866, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984)).

This Court is limited to determining whether the DHS's decision was "based on a consideration of the relevant factors and whether there has been a clear error of judgment." *Mt. St. Helens Mining & Recovery Ltd. P'ship,* 384 F.3d at 728 (citations omitted).

■ The DHS based its decision to deny Plaintiffs' request for Agent Scott's deposition on factors (4), (5), and (7) in 6 C.F.R. § 5.48(a). (Doc. # 1, Ex. 2; Russell Decl. ¶¶ 5–7, Doc. # 3–2; Buck Decl. ¶ 4, Doc. # 3–3). After examining the arguments of the parties and the evidence in the record, the Court concludes that the DHS's decision was based on a consideration of the relevant factors.

After examining the arguments of the parties and the evidence in the record, the Court further concludes that the DHS has articulated a rational connection between the facts and the choice made, and the DHS did not commit a clear error of judgment. *See Davis Enters. v. Envtl. Prot. Agency,* 877 F.2d 1181, 1187 (3d Cir.1989) ("Notwithstanding Appellants' argument that Erdman's deposition, which they have volunteered to take at his office, would only take a minimal amount of time, there is no guarantee that cross-examination would not be lengthy.... Moreover, Appellants' argument about the minimal burden in this case fails to take into account the EPA's legitimate concern with the potential cumulative effect of granting such requests.... Its concern about the effects of proliferation of testimony by its employees is within the penumbra of reasonable judgmental decisions it may make."); *City of Ashland v. Schaefer,* Civ. No. 08–3048, 2008 WL 2944681, at *6 (D.Or., July 31, 2008) ("[T]he USDA is in the best position to determine the time and effort involved in preparing the employees for their depositions and testimony and how that time commitment might hamper their ability to

fulfill their duties. Thus, the Court cannot find that the USDA's decision regarding the testimony's undue interference with the employees' [duties] was unreasonable or irrational."); *Haithcox v. GEO Group, Inc.,* No. 07cv160, 2008 WL 2487913, at *1 (D.Colo., June 16, 2008) (affirming the DHS "determination ... based on a consideration of the factors outlined in 6 C.F.R. § 5.48"; plaintiff was a former employee at a federal detention facility who claimed a DHS employee was a fact witness in his employment discrimination suit against the private corporation which ran the facility); *Bobreski v. U.S. Envtl. Prot. Agency,* 284 F.Supp.2d 67, 80 (D.D.C.2003) ("The plaintiff may not agree with EPA's assessment and its denial of the plaintiff's request. But neither the plaintiff nor this court may substitute their judgment for that of the EPA. Because EPA made a rational decision in accordance with its Touhy regulations, the court determines that EPA's denial of the plaintiff's request for the inspector's testimony was not arbitrary and capricious."); *cf. U.S. v. Fleet Mgmt. Ltd.,* Crim. No. 07–279, 2008 WL 1848102, at *4 (E.D.Pa., Apr. 24, 2008) (holding it was an abuse of discretion for the DHS to refuse to provide a witness who was "critical to the[ ] defense" in a criminal case). As the Third Circuit stated in affirming an agency denial pursuant to the agency's Touhy regulations:

> We do not gainsay that there is a generalized public interest in having public employees cooperate in the truth seeking process by providing testimony useful in litigation. While ... it is not likely that we would have interpreted the EPA's interests as narrowly as it has done here, we cannot say that it abused its discretion in deciding that its interest in having the time of its employees (and therefore taxpayers' money) spent on agency business outweighed the interests of Appellants in having the EPA reports admitted into evidence in private litigation to which the EPA was not a party.

*Davis Enters.,* 877 F.2d at 1188. The DHS's decision was not arbitrary and capricious and, accordingly, it is upheld by the Court.

## IV. Conclusion

IT IS HEREBY ORDERED that the Motion to Dismiss Or, in the Alternative, for Summary Judgment is **GRANTED.** (Doc. # 3). The Clerk of the Court shall enter judgment in favor of Defendants and against Plaintiffs.